GRAYDON'S EXECUTORS *vs.* GRAYDON and others.

1. Where a will first *authorizes* executors to sell testator's real estate, expressly, at their discretion, and then *directs* them to convert into money and invest all the rest of testator's estate not already in money, the words "all the rest," *ex vi termini,* exclude the real estate.

2. Shares in the capital stock of corporations are neither money nor securities, but simply the title of the corporator to his proportion of the corporate property and income.

3. Where movables are directed to be sold, and no provision is made for maintaining or keeping the family in the family mansion, executors have no right to leave the furniture in the possession and use of such of testator's children as stay in the mansion.

4. Where a testator directs a specified part of his property to be con-

Graydon's Executors *v.* Graydon.

verted into money and invested, and the interest paid to his children, this would not include in the direction to invest the proceeds of lands authorized by another clause of his will to be sold at discretion, or other assets not directed to be invested. '

5. When a testator has disposed of part of his property by particular bequests and limitations over, and does not dispose of a large part, and makes no residuary disposition, the courts, with no other positive guide to his intention, will not, by speculations or conjectures, intend that he designed to dispose of the whole in the same manner and by inadvertence omitted it; but will rather intend that he designed that the residue should descend as directed by law, free from limitations over, which are not favored in the law of the state.

6. Directions in a will that if one of the sons of testator shall marry a certain person named, he shall take no part of testator's estate, but that the executors should dispose of testator's estate as if that son had died in testator's life intestate, and without issue, takes effect as a residuary bequest upon the marriage of that son to the person named after testator's death.

7. A condition to a bequest to a son of the testator, that it should be void if within a stated time he should marry a daughter of a person named, is not illegal as a restraint upon marriage.

8. Such condition is not void for uncertainty because it appears that there are two persons of the name in the condition—father and son—if it appears by evidence that the son was unmarried, and had no children, and that testator's son, with his knowledge, was paying attentions to one of the two daughters of the father of that name. This is a latent ambiguity arising from extrinsic evidence, and may be explained by such evidence.

This cause was argued upon bill, answer, and proofs.

*Mr. C. H. Voorhis,* for complainants.

*Mr. Knapp,* for defendant John Graydon.

THE CHANCELLOR.

The complainants are executors of the will of Samuel Graydon, late of the county of Bergen. The object of this suit is to settle the construction of the will, and to direct the complainants as to their duty in executing it.

The testator died on the 17th day of August, 1869. By his will, dated July 11th, 1868, he authorized his executors, at their discretion, to sell his real estate. He directed them

to convert into money all his personal estate not already in money or securities, and invest the same securely at interest, and to apply so much of the interest as should be necessary, to the support of his children until the youngest should be twenty-one. The great bulk of his estate consisted of shares in corporations, and was therefore included in this direction. When the youngest of his children should arrive at the age of twenty-one years, " then the said principal to be divided between them, share and share alike; said children being Caroline Graydon, John Graydon, Ida Graydon, and Samuel D. Graydon." The sum of $12,000 of John Graydon's share, and a like sum of Samuel's share, is directed to be kept at interest, and the interest of the part of each paid to him during his life, and at his death the principal to go to his issue. The whole shares of the two daughters were to be in like manner kept at interest; the interest during their lives paid to each respectively, and at her death the principal to go to her issue, when the youngest of said issue shall arrive at the age of twenty-one.

The sixth clause provides as follows: " If my said children shall die before a division of the property be made under the foregoing provisions, leaving no lawful issue, then I give and bequeath all the said rest of my estate, including said money and securities, and real and personal estate of every kind and nature, to my brothers." Besides this, the will makes no disposition of testator's real estate or money, or securities for money, unless the eighth clause is construed to dispose of them in the contingency there provided for.

The eighth clause is in these words: " If my son, John Graydon, shall marry a daughter of A. I. Cameron, of Ridgewood, Bergen county, New Jersey, prior to December 1st, 1879, then my will is, and I order that he take no part or share of my estate, either of principal or interest, and the provision heretofore made for him is upon condition that he do not marry a daughter of said A. I. Cameron before December 1st, 1879. If he do, I hereby declare such provision void and revoked. And in case my son, John Graydon, do marry

a daughter of A. I. Cameron aforesaid, before December 1st, 1879, then I order my said executors to dispose of my estate as if my son were dead in my lifetime intestate, and without issue, but subject, in other things, to the provisions of this my will."

John Graydon, on the 10th of November, 1869, married Jessie Cameron, the daughter of Alexander I. Cameron, of Ridgewood. They had entered into a mutual engagement of marriage in February, 1868. . He then promised to marry her on his return from California, where he was about to go, and from which he returned in September, 1869, shortly after his father's death. He knew the provisions of his father's will before the marriage.

The questions on which the complainants ask for the directions of the court are these :

1. Whether the directions to invest and pay over interest include the proceeds of the real estate and the money and securities for money.

2. Whether shares in corporations are included in the exception of securities, or whether they must be sold without regard to the fact that the interest of the proceeds will be less than the dividends.

3. Whether the executors may permit the furniture and other movable chattels to remain unsold for the use of the family.

4. Whether, if the lands be sold, the income should be paid to the children.

5. Whether the testator is intestate, except as to the personal estate, which is not money or securities for money, and except a legacy of $1000 which is given to Amanda Field, and an annuity of $200 given to his mother.

6. Whether John Graydon, by his marriage, is deprived of all right to any part of his father's estate.

1. The will, after authorizing the executors to sell the real estate, and expressly leaving the sale to their discretion, di-

rects : "All *the rest* of my estate not already in money or securities, I *order* my executors to convert into money and invest." The words, " all the rest," *ex vi termini*, excludes the real estate which he has just provided for. And he expressly stated as to it: "I do not order them to sell the same ; I leave it to their best judgment." This is inconsistent with including it in the property which he now orders to be converted into money.

2. Shares in the capital stock of corporations are neither money nor securities. They are simply the title of a shareholder to his proportion of the corporate property and its income. Bonds, mortgages, notes, bills of exchange, and matters of like nature, are securities for money. Shares of capital stock are never called securities, unless when made so by being pledged as collateral. And here the testator could not have considered them as excepted under the term of securities, for, without these, there was not personal property to produce $12,000, the sum which he directed to be invested for each of his sons, out of his fourth of the proceeds. Both the language of the will and the condition of his estate show that he intended these shares to be converted into money, and invested. The executors are bound to obey this direction of the will. The wisdom of the direction is not for their consideration.

3. The testator, having no wife, provided for his four children by the interest of $12,000 for each of his sons, and by the larger interest of her fourth share of the whole fund for each of his daughters. He made no provision for keeping up the mansion as a home for the family. The executors should not allow the furniture and other movables to be used and worn out, contrary to the express direction of the testator.

5. The interest of the proceeds of the lands when sold is not included in the directions of the fifth clause to apply interest to the support of the children.

5. The only direct and positive dispositions made, besides the money legacy and the annuity, are as to the proceeds of the personal property directed to be converted into money. The money, and securities for money, and the real estate or its proceeds, are not included in this disposition. The language of the fifth clause, which contains the operative words of bequest, is clear and precise. After directing all the rest of his estate, not already in money or securities, to be converted into money, and disposing of the interest until the youngest child shall be twenty-one, it directs that, " then the *said* principal shall be divided between them, share and share alike." And all the other provisions, except those in the fifth and eighth clauses, relate to the shares of the four children in this fund.

The only disposition of any rest or residue of his estate is that contained in that part of the eighth clause, which directs his executors, in case of John's marriage to A. I. Cameron's daughter, to dispose of his estate as if John had died in his lifetime intestate, and without issue, but subject in other things to the provisions of the will.

If John had died in testator's lifetime, the bequests to him would have lapsed ; and if there had been a residuary bequest, would have fallen into the residue and been thus disposed of. But as there is no residuary gift, the testator, as to these lapsed bequests, is intestate. Had the principal of the fund been given to his children as joint tenants and John had died, the survivors would have taken the whole. But the bequest to them, " equally to be divided between them, share and share alike," made them tenants in common, and the share of one dying would lapse. Had it been given to the children by the name of children, or as a class, without naming them, then it would have gone to those who constitute that class at testator's death, or the time for division, but here they are enumerated by name in the bequest. And the effect is the same as if it had been given to each by name only. As to the share of John in the fund arising from this conversion of personal estate into money, I am of opinion that the testator

also died intestate, except so far as the words of the eighth clause excludes John from any part of it. It must be equally divided among the three other children. The words "subject in other things to the provisions of this my will," do not apply to this lapsed share. He was here speaking of his whole estate. He had made certain provisions as to the shares of each child in the fund directed to be invested, and only in regard to shares in that fund. The general direction to dispose of his whole estate as if John were dead in his lifetime, might, without this saving clause, have been construed to affect the shares of the others. These words cannot be construed to extend these provisions further than they are applied in the will. Nor can directions or limitations as to John's share, be applied to the issue of the other children. Indeed, the words "in other respects" seem to exclude John's share from this clause. That had just been declared forfeited, and was the only thing to be distinguished and excluded by the word "other."

The above conclusions are founded on the language used by the testator, and are the only conclusions that can be arrived at consistent with that language, according to the rules adopted for construing language. There is nothing in any provision of any part of the will, or any intention expressed by the testator to lead to a different result, or to cause any doubt as to this interpretation. Yet, as a matter of speculation, it is not difficult to suppose that the testator intended to dispose of all his property, and has failed to use words to express that intention. On the other hand, it is possible that he intended to leave the proceeds of his real estate and chattels, and his money and securities, free from the strict, long limitation with which he has tied up the special fund. He freed the shares of his sons in that fund beyond $12,000, from that limitation. When we look outside of the will for intention, and use speculation and probabilities to ascertain what a testator intended and did not express, we repeal the statute of wills and make testaments by the imagination of the judge.

6. As to the right of John Graydon, it is urged that the person whom John is not to marry is not designated with sufficient certainty; the words are, "a daughter of A. I. Cameron, of Ridgewood." Besides Alexander I. Cameron, whose daughter John married, there was living at Ridgewood one Alpin I. Cameron, who usually wrote his name A. I. Cameron, and was known by that designation. This is a latent ambiguity, or one that does not arise upon reading the will, but upon facts outside of it. · It therefore may be cleared up by evidence *dehors* the will. Alpin I. Cameron, who was a son of Alexander I. Cameron, has never been married, and, therefore, could not, at the date of the will, have been intended as having a daughter of a marriageable age in 1879. Besides, it is shown that John had paid his addresses to Jessie Cameron before 1868, in testator's life, and with his knowledge, and seemingly without his disapprobation until John became a Romanist, as was supposed by the testator, through her influence or that of her family. There can be no doubt but that testator meant a daughter of Alexander I. Cameron, who had marriageable daughters, and not a daughter of Alpin I. Cameron, who not only had no daughter, but could have had none marriageable in 1879.

It is further contended that this condition is void, because it is in restraint of marriage, and because it requires John to do an illegal and immoral act; to violate his engagement with his present wife, made and entered into before he knew of this provision in his father's will, and, in fact, before the will was executed.

Although the law as to the validity of conditions in restraint of marriage, may be considered to a great extent unsettled, both in England and this country, yet some points are settled so as to be beyond controversy. The general rule is, that a condition in restraint of marriage in general, or of marriage to any person whatever, is void, and the devise or bequest takes effect. But any one may limit a gift to his wife to her widowhood, or may annex a condition that it shall go over on her marriage; this is a well-established exception

to the rule. So also where provision is made for the support of daughters as long as they continue unmarried and need support, where the evident intention is not to restrain marriage, but to provide support.

On the other hand, in a gift to one as long as she continues to live separate from her husband, or on condition that she live separate from her husband, the limitation or condition is void and the gift is absolute. So any condition is void that is criminal, illegal, or *contra bonos mores.*

So also it is held that a father, to whom the law gives positive control over the marriage of his children while minors, and who is at all times their proper and natural adviser and counselor in marriage connections, may annex to a gift a condition that it shall be void if his child shall marry a particular person, or one of a specified class, as a Scotchman, a Papist, or a Baptist. And without question, the condition in this case that John should not marry a daughter of A. I. Cameron is valid, if it does not require him to do an illegal or immoral act, to violate a legal and binding contract to marry.

There is, perhaps, no adjudication that a condition which requires the violation of a binding legal contract to marry is a void condition, or that it is a valid one. And it is not necessary here to consider or determine that. As John was a minor until after his marriage, the contract was not legal or binding. The common law and the law of this state favor the control of a parent over the marriage of minor children. Such marriage, without consent of a father in his lifetime, is forbidden, and although not declared void, it subjects the person solemnizing it to a penalty. It is against the policy as well as the provisions of our law to allow a contract by a minor to marry to be declared valid or binding, so as to make a condition in a father's will to defeat it void, and a regard to the spirit of that law cannot be *contra bonos mores.*

On the contrary, it is the duty of the courts to favor this or any other legal means which a father may adopt to enforce the authority which the law, for wise purposes, has given to him over his minor children, and that regard for his wishes

and counsel in the more important concerns of their lives after maturity, which the untrammeled testamentary power conferred by our law is calculated to secure.

I am of opinion that the condition is certain and is a legal and valid condition, and makes void the bequests to John; and that the direction to the executors to dispose of the estate as if John were dead in testator's life, gives to the three other children, absolutely, both the share of the fund bequeathed to John and his issue, and that part of testator's property outside of this fund, which, by the law of succession, would have gone to John but for this provision.