HAROLD ALPER, COMPLAINANT-APPELLANT, v. THERESA ALPER, DEFENDANT-RESPONDENT, AND JEROME ALPER ET AL., DEFENDANTS-APPELLANTS.

Argued March 21, 1949—Decided April 25, 1949.

106

Mr. *Milton M. Unger* (*Messrs. Milton M. & Adrian M. Unger,* attorneys) argued the cause for the complainant-appellant Harold Alper.

Mr. *Meyer E. Ruback* (*Mr. Joseph A. Weisman,* on the brief; *Messrs. Ruback & Albach,* attorneys) argued the cause for the respondent Theresa Alper.

Mr. *Irving Morris* (*Messrs. Robinson & Morris,* attorneys) argued the cause for the defendants-appellants Jerome Alper et al.

*Mr. Sheldon G. Harlan* on the brief for the appellant Goldye A. Shapiro, guardian *ad litem*.

The opinion of the court was delivered by

HEHER, J. The primary question here is the meaning and the validity of this testamentary condition:

"Tenth :—It is my will and command that should any of my children or said grandchildren institute or maintain any proceeding in any court, for the purpose of attacking the validity of this Will, or for the purpose of effecting a disposition of my estate other than in the specific manner aforementioned, by court proceeding or otherwise, then it is my will and I do hereby order that the respective devises and bequests, other than those herewith made to my executrix aforementioned, be cancelled and deemed forfeited, unless otherwise ordered verbally and in writing by my said executrix, regardless of whether or not they have in any way participated in said contest, and in such event, I devise and bequeath their respective shares to my said devoted and faithful child and executrix, Theresa Alper, aforementioned, provided that such contest by court litigation is not instituted in the first instance by my said executrix, it being my purpose and intent that the validity of this Will and its purposes, as herein expressed, should not be attacked in any manner whatsoever, directly or indirectly, by my said heirs."

The decedent died July 12, 1945. By a will made May 4, 1939, he devised and bequeathed certain real property and the residue of his estate to seven of his eight children and to the children of the eighth child, Goldye Shapiro, in these shares: 40% to his daughter Theresa; 10% each to his daughters Pearl and Mildred and his sons Nathaniel and Harold, and the like interest to Theresa in trust for Goldye's children; and 5% each to his son Jerome and his daughter Cecele. There were also certain charitable bequests payable out of the personal estate only. The testator expressed the "same love and affection" for "each and all" of his children, and explained that his estate was divided "on the basis of the financial needs and requirements" of his children and grandchildren. Goldye is not a beneficiary under the will. She was estranged from her husband; and it is clear that the testator thus sought to put beyond his reach the share of the estate that would otherwise have gone to Goldye.

Goldye entered a caveat to the probate of the will, charging that it was the product of undue influence exercised by Theresa, and prosecuted the inquiry to a conclusion. The Essex Orphans' Court resolved the issue against her and directed probate of the will. On Goldye's appeal, the decree was affirmed in the Prerogative Court. *In re Alper's Will,* 142 *N. J. Eq.* 529 (1948). The decree of the Prerogative Court was this day affirmed by this court. 2 *N. J.* 104.

The subject matter of the bill of complaint is the validity of certain *inter vivos* transfers of real property and moneys and bank credits made by the testator, allegedly induced by undue influence exerted by Theresa. The learned Vice-Chancellor ruled that under the cited clause of the will the proceedings on the caveat worked a forfeiture, in favor of Theresa, of all devises and bequests to the testator's other children and the grandchildren, and so they are without interest in the subject matter.

### I.

It is the insistence of appellants that the condition "is ambiguous and should not have been enforced." The principle invoked is that conditions subsequent are to be strictly construed; and that such conditions must be definite and certain, and if the terms are so vague as to render doubtful the event which will operate to defeat the estate, the condition is void for uncertainty and the gift is absolute. *Den v. Lawrence Church,* 20 *N. J. L.* 551 (*Sup. Ct.* 1845) ; *Girard Trust Co. v. Schmitz,* 129 *N. J. Eq.* 444 (*Ch.* 1941). And the argument is that while the phrase "any of my children," standing alone, would be inclusive of the child not named as a beneficiary, the language of the condition, considered as a whole, reveals an intention to make the forfeiture operative only in case of a breach of the condition by one of the beneficiaries designated in the will. It is said that the personal pronoun "they" in the subsequent phrase "regardless of whether or not *they* have in any way participated in said contest," and the words *"their respective shares"* in the later provision for a gift over for breach of the condition, have

reference to and serve to modify the earlier phrase "my children or said grandchildren" and signify a purpose to make the "blanket forfeiture" operative "only in the event that one or more *beneficiaries* contested the will." We are not in accord with this interpretation.

The antecedent noun equivalent to which the personal pronoun "they" is referable is to be found in the provision for the "cancellation" and "forfeiture," for condition broken, of "the respective devises and bequests, other than those herewith made to my executrix aforementioned." The breach of the condition shall work a forfeiture regardless of the nonparticipation in the "contest" of the beneficiaries of such "devises and bequests," and there is in that event a gift over of "their respective shares" to Theresa. This is to give an orderly arrangement and relation to the words of the sentence in accordance with the rules of syntax. It conforms to established usages of grammatical construction and sentence structure.

It is to be noticed, also, that there was prior mention of all of the testator's children by name.

And the closing words "by my said heirs" are not significant of a different intention. It is suggested that this phrase was used in a popular nonlegal sense to refer to children and grandchildren who are beneficiaries under the will, and thus to exclude forfeiture in the event of a contest of the will by a disinherited child.

██ But terms of art are to be given a technical construction unless their use in a popular sense is evident from the will, taken as a whole. Their normal signification in the law is presumed to be their testamentary sense, barring a clear expression *contra. Chandler v. Thompson,* 62 *N. J. Eq.* 723 (*E. & A.* 1901); *Miller v. Worrall,* 62 *N. J. Eq.* 776 (*E. & A.* 1901); *Apgar v. Hoffman,* 113 *N. J. Eq.* 233 (*Prerog. Ct.* 1933). The testator's intention is to be collected from all parts of the will; and the technical usage is to be given terms of art unless such usage would defeat the testamentary purpose plainly manifested in the context. Here, the technical sense of the term is in conformity with and not

in opposition to the intention explicitly declared in the context; and it would be a perversion of the primary principle of interpretation to accord to this phrase of technical import a popular meaning at variance with that purpose.

## II.

Conceding the validity in this State of a condition subsequent providing for the forfeiture of the share of a beneficiary who contests the validity of the will, appellants urge that there is in such provision "a species of equitable election" which serves to sustain it; that if the forfeiture clause be upheld on the ground of equitable election, there is no reason to invoke the forfeiture in the case at hand, for the contestant was not a beneficiary and therefore had no election between an estate or interest under the will and such as would come in the event of intestacy, and her action could affect only the beneficiaries who had the right of election and had elected to receive their share under the will. The cases cited are *Hoit v. Hoit*, 42 *N. J. Eq.* 388 (*E. & A.* 1885); *Cross v. French*, 118 *N. J. Eq.* 85 (*Ch.* 1935); modified, 119 *N. J. Eq.* 563 (*E. & A.* 1936), and *Provident Trust Company of Philadelphia v. Osborne*, 133 *N. J. Eq.* 518 (*Ch.* 1943), among others. It is said that the provision for the forfeiture of the "vested estates" of the beneficiaries under the will by the act of the nonbeneficiary in contesting probate of the will is contrary to sound public policy, in that (a) it permits "unfair domination" of the beneficiaries (except Theresa) by the nonbeneficiary; (2) it is conducive to a disruption of the "family relationship" and induces "family strife;" and (3) it "invites a fraudulent arrangement" whereby Theresa would become the sole beneficiary.

But the forfeiture clause is not grounded in the principle of election. It is a condition subsequent or, in technical strictness, an executory limitation. The provision is not merely *in terrorem*. There is a specific gift over. *In re Carr's Estate*, 138 *Pa. St.* 352, 22 *A.* 18 (1890); *Rudd v. Searles*, 262 *Mass.* 490, 160 *N. E.* 882, 58 *A. L. R.* 1548 (1928). It is a device employed for the effectuation of the testamentary intention;

and its use here was within the province of the testator if not opposed to public policy or a rule of positive law. The testator could have given his entire estate to Theresa in the first instance, had he so chosen; but he elected to divide it among his children, giving to the children of Goldye the share she would have received had it not been for the necessity of putting it beyond the control of her estranged husband, all subject to the executory limitation embodied in the clause under review. If "any" of the testator's children "or said grandchildren" should attack the validity of the will, or the disposition of his estate made therein, then and in that event all such devices and bequests, other than those made to Theresa, would become forfeit and the gift over to Theresa for condition broken would become effective. The testator's intention is clear and indubitable. Is it contrary to public policy?

Public policy is the public interest; and the essential question is whether the public interest will be best served by the absolute enforcement of the condition or its nonenforcement where there existed *probabilis causa litigandi*. Do the opposing considerations of policy weigh in favor of enforcement or nonenforcement of the restraint? It is a vexed question that has given rise to a contrariety of view in this country. The consensus of the legal scholars who reviewed and assessed the pertinent reasons of social policy *pro* and *con* in the restatement of the law of property is that the rule of *probabilis causa litigandi* should be applied where the contest of the will is waged on the ground of forgery or subsequent revocation by a later will or codicil; but where the contest proceeds upon the typical grounds of fraud, undue influence, improper execution or lack of testamentary capacity, the condition is entirely reasonable and enforceable, notwithstanding the existence of probable cause for the contest. The restraint is defended as a reasonable safeguard against attempted overthrow of the testamentary dispositions by a disappointed heir, striving for an undue advantage, and a device to lessen the wastage of the estate in litigation and the chance of increasing family animosities by besmirching the reputation of the

testator when he is no longer alive to defend himself and to discourage the contesting of wills as a means of coercing a settlement. In these latter cases, the balance of social policy is held to be normally in favor of the validity of the restraint. Where, however, the contest is based upon the claim of revocation by a later will or codicil, the public has an interest which forbids, as in contravention of social policy, a deterrent upon the presentation of the later will or codicil. It is held that one knowing of such an instrument has at least the moral duty of submitting it for consideration; and if he proceeds with "probable cause," he is not subject to the forfeiture prescribed by the contest clause. Likewise, it is said, the principle applies where there is a claim of forgery, for the public has an interest in the discovery of the crime of forgery, if such there was. Apart from the foregoing considerations, it is considered that a claim of forgery or of subsequent revocation by a later will or codicil is usually based upon evidence far more definite in character than "the shadowy lines of demarcation involved" in mental capacity, undue influence or fraud, and is less likely to be employed as a means of coercing a settlement. Here, it is said, the balance of social policy is against full validity of the restraint. Forfeiture should not be visited upon the contestant with probable cause where, because of the nature of the case, the public interest forbids the closing by such means of the door to judicial inquiry. *Restatement, Property*, § 428 (1944). See, also, 49 *Columbia Law Review*, 320, 327.

Where the contest is predicated upon a claim of forgery or of subsequent revocation by a later will or codicil, the very existence of the will is the thing in controversy; and the public may have a sufficient interest in the inquiry respecting the authenticity or subsistence of the proffered instrument to justify such qualification of the general rule. A forged instrument has no existence as a will; and a will is superseded or modified by a later will or codicil. But this question is not before us.

So much for the underlying philosophy! The question, of course, arises only where the attack upon the will is

unsuccessful. Generally, such testamentary conditions subsequent and executory limitations have long had recognition in this State, unqualified by the rule of probable cause or good faith. *Hoit v. Hoit, supra; Kayhart v. Whitehead,* 77 *N. J. Eq.* 12 (*Ch.* 1910); affirmed, 78 *N. J. Eq.* 580 (*E. & A.* 1911); *Guaranty Trust Co. v. Blume,* 92 *N. J. Eq.* 538 (*Ch.* 1921); *O'Donnell v. Jackson,* 102 *N. J. Eq.* 470 (*Ch.* 1928); *Cross v. French, supra; Federal Trust Co. v. Ost,* 120 *N. J. Eq.* 43 (*Ch.* 1936); *Bottomley v. Bottomley,* 134 *N. J. Eq.* 279 (*Ch.* 1944). And a provision for a forfeiture in the event of a contest of the will by a nonbeneficiary was sustained in the Prerogative Court. *In re Simson,* 123 *N. J. Eq.* 388 (*Prerog. Ct.* 1938). There is no principle of public policy which serves to invalidate a condition subsequent or executory limitation of this latter class, even where the contest of the will is prosecuted in good faith and for probable cause, for, as in the case at hand, the one restrained is not deterred from such action by the resultant forfeiture of a share or interest which is his under the will, and thus there is no restraint upon him tending to the obstruction of judicial inquiry or the due course of justice. The loss of interests given to his kinsfolk is not deemed to be such a deterrent. The considerations advanced by appellants are not good grounds for voiding the condition under review. They relate not to the public interest, but rather to matters of purely private concern affecting the wisdom of the exercise of the testamentary power. When the rationale of the rule is once perceived, its limitations are readily understandable. There is no reason of policy for annexing to such a condition the rule of *probabilis causa litigandi,* for that would violate the explicit intention of the testator without serving the public interest. The testator did not condition forfeiture upon *mala fides* or want of probable cause for the contest; and there is no overriding public policy which so conditions the forfeiture in defiance of the testamentary intention. This was a matter of concern to the testator and his beneficiaries exclusively; the public interest was not involved. Testamentary dispositions are required to be enforced unless contrary to public

policy or a rule of positive law. Compare *Rudd v. Searles, supra*. Only a paramount public interest would warrant such abridgment of the inherent right of testamentary disposition.

And the condition is also enforceable against the infant grandchildren. The testator so willed; and there is no consideration of policy which forbids nonenforcement of the provision. It is in no sense a punitive measure, but a devise or bequest upon condition subsequent with a gift over, and therefore an executory limitation. Upon the happening of the prescribed contingency, the gift over becomes effective. The grandchildren take the estate provided by the will, neither more nor less. *Rudd v. Searles, supra; Old Colony Trust Co. v. Wolfman*, 311 *Mass*. 614, 42 *N. E*. 2d 574 (1942).

### III.

The "clean hands" maxim has no application. Theresa's invocation of the forfeiture clause was essentially defensive and was not unconscionable or inequitable. She did not thereby confess willful misconduct which disentitled her to relief. She simply pleaded that, by the operation of the forfeiture clause, the subject matter of the bill of complaint became her exclusive property, and neither the complainant nor her co-defendants has an interest therein.

It is immaterial that one or more of the testator's children claim to be creditors of the estate. Complainant did not sue in a representative capacity; and the complaint is not a creditor's bill. The rights of creditors are enforceable in an appropriate proceeding. The decree herein does not put the property beyond the reach of creditors.

We have no occasion to consider the questions of pleading raised by some of the defendants. They do not affect the substantive rights of the parties.

The decree is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, WACHENFELD, BURLING and ACKERSON—6.

*For reversal*—None.