**In the Matter of the ESTATE of Leslie A. LUMMIS, Deceased.**

**Arnold R. BOYD et al., Plaintiffs,**

**v.**

**Marguerite Lummis KEESEY, Defendant.**

**Civ. No. 574–53.**

United States District Court, D. New Jersey.

Nov. 29, 1954.

See also, D.C., 118 F.Supp. 436.

Schenck, Price, Smith & King, by Robert H. Schenk, Morristown, N. J., for plaintiffs.

Roger Hinds, Newark, N. J., for defendant.

MEANEY, District Judge.

Leslie A. Lummis died testate June 25, 1948, a resident of Morris County, New Jersey, his will being duly probated and recorded in the Morris County Surrogate's office July 14, 1948. This will set up a trust naming as trustees Arnold R. Boyd, Margaret Beaumont Roebelen and Marguerite L. Keesey, who, having duly qualified, continue in that position. Pursuant to the terms of the will one-half of the income of the trust estate is payable to Marguerite L. Keesey (widow of testator) for life, and one-quarter to Margaret Beaumont Roebelen for life (a fourth quarter is payable to a former wife of the testator not concerned in this action). The sixth clause of the will provides that upon the death of Marguerite L. Keesey there will be a lapse and a

permanent trust will be effectuated by the remaining trustees, or their successors, to pay the trust income over to Dartmouth College.

The will contains other provisions among which are clauses 9 and 11, which would seem to be the basis of the present proceedings and which read as follows:

Ninth: I give to my said executors and trustees, or the survivors or survivor or successor of them, full power and authority to do, in their, her, his or its discretion, and without liability for any error of judgment or any loss which may be occasioned thereby, any or all of the acts hereinafter mentioned, that is to say:

(a) To conduct, carry on, manage, operate and continue the business of the Lummis Glass Company, Inc. from such locality and in such territory and for such length of time, and in such manner as my said executors and trustees at the time in office shall deem advisable and for the best interest of my estate.

(b) To sell, without application to court, and at public or private sale, the whole or any part of the properties and assets of my said estate, or of the trust herein provided, upon such terms and conditions as to my executors or trustees at the time in office may seem proper and for the best interest of my estate or the trusts herein provided, and/or convenient for the distribution and administration thereof.

(c) To retain and hold any securities, properties or other assets in which the funds of my estate may be invested at the time of my death.

(d) To become party to any reorganization, consolidation, merger or other capital readjustment of any corporation, the stocks or securities of which may at any time be held by them as executors or trustees during the administration of my estate or the life of the trusts herein provided, and to participate in any such reorganization, consolidation, merger or readjustment to the same extent and as fully as though they were the absolute and individual owners of such stocks or securities, and to deposit with any committee or depositary, pursuant to any plan or agreement of reorganization, consolidation, merger or readjustment, any property held by them as executors or trustees, and to make payment from the principal of my estate or of the trusts herein provided of any charges or assessments imposed by the terms of any plan or agreement of reorganization, consolidation, merger or readjustment, and to receive and continue to hold any property allotted to my estate, or to the trusts herein provided, by reason of the participation therein of my executors or trustees.

(e) To invest and reinvest the funds of my estate, or the trusts herein provided, in such manner as in their, her, his or its judgment may seem proper, and my said executors and trustees, at the time in office, in making investments hereunder shall not be restricted to that class of securities in which fiduciaries are permitted by law to invest trust funds.

I direct that in passing and acting upon any matter in connection with the management, handling and administration of my said estate, and in the operation, conduct and management of the business of the Lummis Glass Company, Inc., and in the voting of any stock held by my estate or the trusts herein provided, and in the sale and distribution of any securities or assets of my estate, or the trusts herein provided, and in the investment and reinvestment of any funds of my estate, or the trusts herein provided, the majority opinions and decisions of my executors and trustees at the time in office shall control, govern and be sufficient for the action of my said executors and trustees.

Eleventh: If any beneficiary named above in this my Last Will and Testament shall take legal steps to prevent the probate of this my Last Will and Testament, or to prevent the full and complete carrying out of any of the provisions thereof as herein set forth, then I direct that such objecting beneficiary shall, by reason of such action, lose all right to the whole or any part of any interest or share herein provided for his or her benefit, or in any way to share in the distribution of any of the assets and properties of my estate, and in such event I direct that the share or interest of such objecting beneficiary shall be held for the next beneficiary in line of succession to such interests as herein directed.

Arnold R. Boyd and Margaret Beaumont Roebelen are residents of New York, Mrs. Keesey of Connecticut. The major asset of the trust estate is the capital stock of the Lummis Glass Company, a New York corporation.

After the demise of the testator, the three trustees acting within their powers elected themselves directors and officers of the Lummis Glass Company, and in such capacities have conducted the business of the Company since that time.

In May, 1953 Marguerite Lummis Keesey (hereinafter referred to as the defendant in the present action) brought suit in the Supreme Court of New York, a court of competent jurisdiction, against the other two directors of the Company (hereinafter called plaintiffs) to declare void certain of their actions as officers and directors of the Company on the ground that they adversely affected the interests of that Company, and asking for certain other remedies. This action was dismissed on the merits by a judgment in favor of the plaintiffs, entered on April 20, 1954.

In June, 1953 plaintiffs brought proceedings in the Morris County Court, Probate Division, for advice and directions as to whether defendant had by her action in the New York Supreme Court forfeited her interest in one-half the income of the trust pursuant to paragraph 11 of the will.

On July 13, 1953 the defendant filed a petition for removal to this court on the ground of diversity of citizenship. On February 4, 1954 this court denied plaintiffs' motion to remand and defendant's motion to dismiss. It was found that there was "sufficient controversy" between adverse parties, and also that the Morris County Court had power to determine the issues involved and hence this court succeeded to those powers.

On September 14, 1954 and October 6, 1954, cross motions for summary judgment were respectively filed by the defendant and the plaintiffs. Oral argument was had on November 8, 1954, and counsel agreed to submit additional briefs which have been submitted with certain affidavits.

The first question to be considered, and one which may be dispositive of the whole matter, is whether or not by instituting the New York action the defendant herein subjected herself to the forfeiture clause of the will of Leslie A. Lummis, deceased.

As already indicated, the institution of the New York suit by defendant was based on her status as a corporate director with the cloak of a fiduciary. The law imposed certain responsibilities on her as an officer and director of the Company to protect both the corporate interest of the estate and the trust created by the deceased. Moreover, the interests of the eventual beneficiary of the permanent trust, Dartmouth College, would be affected by improper acts of the corporation management. The defendant also had this to consider as her responsibility. Certainly if this eventual desire of the testator was to be fulfilled, it was consistent with this aim that the defendant took the step which she did take, even though the action brought by her was decided adversely to her contention.

It is true that the intent of the testator should prevail in construction of the terms of a will, for a testator has the right to dispose of his property as he sees fit, provided of course that such provision does not run counter to law or to what has been determined to be public policy. That right may be expressed with testamentary conditions subsequent and with executory limitations which may not be contested even where honesty of purpose, probable cause or good faith prompt such contest. This has been established by many decisions of our courts such as may be found in Hoit v. Hoit, 42 N.J.Eq. 388, 7 A. 856, as far back as 1885; Kayhart v. Whitehead, 77 N.J.Eq. 12, 76 A. 241, affirmed by the Court of Errors and Appeals in 78 N.J.Eq. 580, 81 A. 1133; Federal Trust Co. v. Ost, 120 N.J.Eq. 43, 183 A. 830, and in recent years by the present Supreme Court of New Jersey in Alper v. Alper, 2 N.J. 105, 65 A.2d 737, 7 A.L.R. 2d 1350, where the court held that where forfeiture was provided in the event of contest even by a *non-beneficiary* (emphasis supplied) such a provision was to be sustained, supporting the doctrine propounded in the case of In re Simson's Estate, 123 N.J.Eq. 388, 196 A. 451. The restraints established by testators are "defended as a reasonable safeguard against attempted overthrow of the testamentary dispositions by a disappointed heir, striving for an undue advantage, and a device to lessen the wastage of the estate in litigation and the chance of increasing family animosities by besmirching the reputation of the testator when he is no longer alive to defend himself and to discourage the contesting of wills as a means of coercing a settlement." Alper v. Alper, above cited, 2 N.J. at page 112, 65 A.2d at page 740. Although this recital does not exhaust the nature of possible contests and their effects, it sufficiently establishes the rationale of the principle.

However, the action instituted by the defendant in the New York Supreme Court does not appear to this court as an attempt to thwart the testator's intent as expressed in his will nor to overthrow a testamentary disposition. And the fact that forfeiture clauses are recognized as valid in New Jersey, such a clause in a will "is to be strictly construed against a forfeiture and reasonably construed in favor of the beneficiary." See Marx v. Rice, 142 N.J.Eq. 315, 60 A.2d 61, affirmed in 1 N.J. 574, 65 A.2d 48, 9 A.L.R. 2d 584.

It is the conclusion of this court that the action taken by the defendant, Marguerite Lummis Keesey, was not of such type as to constitute a legal step to prevent the full and complete carrying out of any provision of the will in question and hence did not subject her to forfeiture of her interest therein.

The motion for summary judgment by the plaintiffs is denied, and the motion for summary judgment by the defendant is granted.

With this disposition of the matter, further determination of motions made during the proceedings is unnecessary.

Let an order be submitted accordingly.