61 N.J. Super. 526 (1960)
161 A.2d 318
IN THE MATTER OF THE ESTATE OF ROBERT BADENHOP, DECEASED.
Superior Court of New Jersey, Monmouth County Court, Probate Division.
Decided May 25, 1960.
*529 Mr. J. Victor Carton appeared for the plaintiffs (Messrs. Durand, Ivins & Carton, attorneys).
Mr. Thomas J. Smith appeared for the defendants (Messrs. Parsons, Labrecque, Canzona & Blair, attorneys).
SIMMILL, J.C.C.
On September 20, 1959 Robert Badenhop died, testate, leaving a will dated January 7, 1954, a codicil dated February 8, 1954, and an alleged codicil dated September 11, 1959. The present applicants are executors and trustees named in the will. Both codicils republish the will. Upon being presented to the Surrogate of Monmouth County he adjudicated that doubts arose as to the due execution of the second codicil. On October 23, 1959 an order to show cause was obtained why the will and codicils should not be probated, and on the adjourned return date thereof, December 11, 1959, the court entered judgment denying probate of the second codicil to the will. On January 22, 1959 Selma A. Badenhop filed a notice of appeal from that judgment. If the second codicil is effective, Selma A. Badenhop will gain pecuniarily tax-wise to the ultimate *530 pecuniary detriment of the executors and trustees. Accordingly, the pecuniary interest motivates the widow in prosecuting the appeal and pecuniary interest likewise would motivate the executors and trustees in opposing the appeal.
The principal problem which confronts the executors and trustees is with relation to an "in terrorem" clause as set forth in the twelfth paragraph of the will, which reads as follows:
"Twelfth: Having given due consideration to the devises, gifts and bequests made in this, my Last Will and Testament, the same have been so made on the express condition that none of the beneficiaries shall oppose or contest the probate or validity of this Will in any manner. Any beneficiary so opposing or contesting the said probate or validity of this Will, or in any way assisting in such act or acts, shall automatically forfeit whatever devise, gift or bequest he or she would have been entitled to receive under the terms of this, my Last Will and Testament."
Accordingly they sought the aid of the Monmouth County Court, Probate Division, and requested this court to lend its advice and direction as to whether or not they should participate in the appeal with a view to sustaining the judgment of the Monmouth County Court denying probate of the second codicil because the twenty-third paragraph of the will required the executors and trustees "to do all lawful things to carry out its terms."
The widow opposes the application and raises two arguments wherein she contends the court should not lend its aid, first, because it is without jurisdiction to construe the will. She suggests that the proper forum is the Superior Court, Chancery Division, and cites Donnelly v. Ritzendollar, 14 N.J. 96, 106 (1953), as the authority for this contention. The court's research indicates that she had stronger reeds on which to rely. Brown v. Fidelity Union Trust Co., 128 N.J. Eq. 197, 204 (E. & A. 1940) holds that the authority of the Orphans Court to construe a will is incidental to its jurisdiction to decree distribution; and In re Morrisse's Estate, 91 N.J. Eq. 477 (Prerog. *531 1920), provides that when an estate is not ripe for distribution, no construction of the will can there (in the Probate Division of County Court) be obtained.
However, the New Jersey Constitution, Art. VI, Sec. IV, Par. 5, provides:
"The County Courts, in civil causes including probate causes, within their jurisdiction, and subject to law, may grant legal and equitable relief so that all matters in controversy between the parties may be completely determined."
In re Sotnikoff, 34 N.J. Super. 422, 425 (App. Div. 1955) provides that the County Court has jurisdiction and cognizance of importance phases of the action, such as the admission to probate of the will and codicils. Having cognizance of the cause under these circumstances, the court receives under the Constitution the jurisdiction further to give the instructions sought. Carton v. Borden, 8 N.J. 352 (1951), disposes of the matter inversely in discussing the jurisdiction of the Superior Court and therein states:
"Nor can there be any doubt of the jurisdiction of the Superior Court to grant part of the relief sought by the plaintiffs, but in its discretion it may decline to exercise such jurisdiction in a case where a will has been probated in the County Court where the estate is being administered there, and where the County Court likewise has jurisdiction to grant the relief sought by the plaintiffs."
In addition dicta in Donnelly v. Ritzendollar, supra, would indicate that the "jurisdiction of this court [Chancery Division] and in the County Probate Court is co-extensive."
This Court therefore rules that the County Court obtained jurisdiction when the matter came on for hearing before it as to the probate of the will and codicils; that it retains such jurisdiction and has jurisdiction coexistently with the Superior Court in connection with the determination of the matters in controversy. To further point up the anomaly of the situation the County Court could very well have transferred the case to the Chancery Division and within five minutes, in the same courtroom, with the same judge *532 presiding, could have determined the matter without controversy as to jurisdiction.
However, the widow further contends that the plaintiffs are not entitled to the advice and directions of the court because the will is plain and unambiguous and that the court will not give instructions dependent upon a future event which may or may not take place and that the court should not give legal advice. She cites numerous cases as regards this contention; however, none of them bear directly upon the proposition presently presented. The executors and trustees are between the Scylla of permitting the appeal to go unopposed and the Charybdis of jeopardizing their inheritance by reason of the in terrorem clause, and in such a case the court is of the opinion that the executors and trustees may with impunity adopt the remedy set forth in N.J.S. 2A:16-55, which provides as follows:
"A person interested as or through an executor, administrator, trustee, guardian, receiver, assignee for the benefit of creditors or other fiduciary, creditor, devisee, heir, next of kin, or cestui que trust, in the administration of a trust or the estate of a decedent, an infant, lunatic, insolvent or other person may have a declaration of rights or legal relations in respect thereto, to:
a. Ascertain any class of creditors, devisees, legatees, heirs, next of kin or others; or
b. Direct the executor, administrator, trustee, guardian, receiver, assignee for the benefit of creditors or other fiduciary to do or abstain from doing any particular act in his fiduciary capacity; or
c. Determine any question arising in the administration of the estate, trust or guardianship, including the construction of wills and other writings."
The court is aware that in invoking the provisions of this act there must be an actual controversy and the action must be an adversary proceeding. Condenser Service & Engineering Co. v. American Mutual Insurance Co., 45 N.J. Super. 31 (App. Div. 1957); Rosenberg v. D. Kaltman & Co., 28 N.J. Super. 459 (Ch. Div. 1953), and numerous other cases. However, the Uniform Declaratory Judgments Law is intended to furnish relief not obtainable by other procedures. *533 Carls v. Civil Service Commission, 31 N.J. Super. 39 (App. Div. 1954), affirmed 17 N.J. 215 (1955). And whether or not a court should award declaratory relief is ordinarily a matter resting in judicial discretion. Utility Blade & Razor Co. v. Donovan, 33 N.J. Super. 566 (App. Div. 1955); In re Stone's Estate, 21 N.J. Super. 117 (Ch. Div. 1952). This court is of the opinion that although in form a controversy does not exist, nevertheless, in fact there is a controversy, and the day when technical considerations are given merit has long passed into the limbo. The court feels that in all equity it should lend its aid to these plaintiffs who find themselves on the horns of this dilemma. In addition the trustees' individual private interests may conflict with the interests of the trust estate in this controversy. Hungerford & Terry, Inc. v. Geschwindt, 24 N.J. Super. 385 (Ch. Div. 1953), affirmed 27 N.J. Super. 515 (App. Div. 1953), holds, "There can be no doubt that where a trustee's individual private interests may conflict with the interests of the trust estate, it is not only his right but his duty to apply to this court, under its general equity powers, for instructions." (Emphasis added) See also the cases therein cited.
An in terrorem clause is to be construed strictly against forfeiture and reasonably in favor of a beneficiary. Morrison v. Reed, 6 N.J. Super. 598, 605 (Ch. Div. 1950); Girard Trust Co. v. Schmitz, 129 N.J. Eq. 444 (Ch. 1941); Marx v. Rice, 1 N.J. 574 (1949). Marx v. Rice further holds, 1 N.J., at page 587:
"A judicial proceeding instituted to obtain an interpretation of a will has for its object the fulfillment of the testator's intention and not the avoidance of it. [Citing cases.] In such a proceeding the beneficiary is seeking merely to ascertain and protect his own gift and is not endeavoring to circumvent the will of the testator."
The advice of the court, pursuant to plaintiffs' request, will follow the doctrine enunciated in Alper v. Alper, 2 N.J. 105 (1949), which holds: "[A forfeiture clause] is *534 a condition subsequent or * * * an executory limitation. * * * It is a device employed for the effectuation of the testamentary intention; and its use * * * [is] within the province of the testator if not opposed to public policy or a rule of positive law." The explicit direction and intention of the testator may not be violated unless there is an overriding "public policy which so conditions the forfeiture in defiance of the testamentary intention." If it is exclusively a matter between the testator and the beneficiaries, the public interest is not involved. "Testamentary dispositions are required to be enforced unless contrary to public policy or a rule of positive law."
"Where * * * a contest is based upon a claim of revocation by a later will or codicil, the public has an interest which forbids, as in contravention of social policy, a deterrent upon the presentation of the later will or codicil," and if one knowing of such an instrument proceeds to submit it with "probable cause" he is not subject to the forfeiture provision. The same may be said where there is a claim of forgery, for the public has an interest in the discovery of the crime of forgery. Also the claim of forgery or revocation by a subsequent will or codicil is usually based on evidence more definite in character than "`the shadowy lines of demarcation involved' in mental capacity, undue influence or fraud, and is less likely to be employed as a means of coercing a settlement," said to be one of the grounds on which the restraint or forfeiture is predicated. In such an instance the public policy is opposed to the validity of the restraint. "Forfeiture should not be visited upon the contestant with probable cause where, because of the nature of the case, the public interest forbids the closing by such means of the door to judicial inquiry." (Emphasis added)
"Where the contest proceeds upon the typical grounds of fraud, undue influence, improper execution or lack of testamentary capacity, the condition is entirely reasonable and enforceable, notwithstanding the existence of probable cause for the contest." (Emphasis added)
The present contest was initiated by the surrogate who ruled that doubts arose on the face of the second codicil, and the County Court held that the same failed to meet the requirements of N.J.S. 3A:3-2, viz., improper publication. Improper publication falls within none of the categories mentioned in Alper v. Alper, supra. The Alper *535 opinion would seem to indicate that a forged will is exempt from the provisions of an in terrorem clause because it is no will at all. Hence it would appear that where the very existence, or coming into being, of the will or codicil is controverted, the forfeiture clause should be invoked. The second codicil in this case did have life until it was struck down by the Probate Division. There can be little difference between improper publication and improper execution. Improper execution does not offend public policy. Hence, logical reasoning would lead to the conclusion that improper publication does not offend the public policy.
Neither party has urged it, but the court also considers which of the problems most seriously offends the court's conscience. The court's conscience may well be invoked by depriving a litigant of his day in court. On the other hand the court's conscience may also be troubled by excluding any considerations of the testator's intention as expressed cogently, forcefully and unambiguously in the will. In the exercise of its discretion as regards the court's conscience it feels that the testator's explicit intentions offend it less than the deprivation of the argument of an appeal. The twenty-third paragraph of the will, which required the executors and trustees "to do all lawful things to carry out its terms," is a general clause similar to that contained in most wills. It cannot have the effect of overruling or in any way voiding the specific in terrorem clause.
Accordingly, the court's advice to the executors and trustees is that if they proceed to contest the appeal, they do so at their peril. The court declines to give instructions, and will content itself by merely offering this advice.