263 N.J. Super. 539 (1993)
623 A.2d 307
IN THE MATTER OF THE ESTATE OF ADOLPH DONNER, DECEASED.
Superior Court of New Jersey, Appellate Division.
Submitted February 10, 1993.
Decided April 19, 1993.
*540 Before Judges KING, BRODY and LANDAU.
Levy, Ehrlich & Kronenberg, attorneys for appellant Tweedy Prager (John J. Petriello, on the brief).
Joel D. Lowinger, attorney for respondent First Fidelity Bank, N.A., Executor.
The opinion of the court was delivered by BRODY, J.A.D.
We must now consider the circumstances under which a testator may lawfully leave a bequest to his daughter on the condition that she obtain a divorce.
Tweedy Prager (plaintiff) appeals from a final order that summarily dismissed her complaint. The complaint challenged *541 certain provisions of a trust agreement, as amended, between her late father Adolph Donner, grantor of the trust and decedent of the within estate, and First Fidelity Bank, N.A. (defendant), trustee of the trust and executor appointed under the decedent's will. The trust is funded by the decedent's residuary estate and proceeds of insurance on his life.[1] Ultimately the principal of the trust is payable to plaintiff's twin daughters. The main provision that is challenged denies plaintiff income from the trust and the opportunity to invade principal until she becomes 65 years old, unless before then her husband Martin Prager dies or they are divorced. Plaintiff argued unsuccessfully before Judge Kentz that the conditions attached to the trust are against public policy and therefore unenforceable because their purpose was to induce her to divorce her husband. We now affirm.
"Testamentary dispositions are required to be enforced unless contrary to public policy or a rule of positive law." Alper v. Alper, 2 N.J. 105, 114-15, 65 A.2d 737 (1949). Whether a provision that conditions a bequest upon obtaining a divorce is contrary to public policy or a rule of positive law was last addressed in Dwyer v. Kuchler, 116 N.J. Eq. 426, 174 A. 154 (Ch. 1934), an opinion by Vice Chancellor Bigelow that plaintiff cites to support her argument. There the decedent created a testamentary trust payable to her daughter "only when and if she shall no longer be the legal wife of Hurlburt Dwyer, either because he shall have predeceased my said daughter, Anna Dwyer, or because of an absolute or qualified legal divorce between them." Id. at 427, 174 A. 154. The Vice Chancellor assumed that the only purpose for the condition was to induce a divorce. He reasoned that such a condition is unenforceable as against public policy because although divorce is lawful, an *542 "inducement to divorce, is an inducement to the wrong which is the necessary prerequisite of divorce." Id. at 430, 174 A. 154.
Several years later, in a somewhat different context, Vice Chancellor Bigelow was more deferential to the decedent's wishes in an opinion that was affirmed by our highest court. Latorraca v. Latorraca, 132 N.J. Eq. 40, 26 A.2d 522 (Ch. 1942), aff'd, 133 N.J. Eq. 298, 31 A.2d 819 (E. & A. 1943). There the testator left his widow a life estate on the condition that she not remarry. Quoting from Graydon's Executors v. Graydon, 23 N.J. Eq. 229, 236 (Ch. 1872), rev'd on other grounds, 25 N.J. Eq. 561 (E. & A. 1874), the Vice Chancellor recited the general rule and its exception as follows:
First, as to the remarriage of the widow. "The general rule is, that a condition in restraint of marriage in general, or of marriage to any person whatever is void, and the devise or bequest takes effect. But anyone may limit a gift to his wife to her widowhood, or may annex a condition that it shall go over on her marriage; this is a well-established exception to the rule." [Latorraca, supra, at 45, 26 A.2d 522.]
Because remarriage, unlike divorce at the time, does not entail wrongful conduct, the Vice Chancellor considered the economic basis for such a condition and enforced it:
Counsel for the widow necessarily admits that a gift of income to testator's widow may be limited to the period during which she will probably most need it, namely, while she remains a widow. But he urges that where testator's purpose is to induce his widow not to remarry, the condition is void. The law makes no such distinction; in this instance the court cannot, and does not, attempt to probe testator's mind and determine his object in making provision for his widow and in terminating her estate upon remarriage. [Latorraca, supra, at 45-46, 26 A.2d 522.]
The analysis in Latorraca, affirmed by the Court of Errors and Appeals, is sound not only in the context of a testamentary gift conditioned on remaining an unmarried widow, but also in the context of a testamentary gift conditioned on becoming divorced. That is, where there is a reasonable economic basis for placing a condition on a bequest or devise, courts should not "attempt to probe [the] testator's mind and determine" whether in fact his or her motive was to obstruct a spouse's remarriage or disrupt a child's marriage.
*543 The facts in the present case are not disputed. The decedent strongly disliked plaintiff's husband. He believed that her husband had tricked him into investing $10,000 in a worthless venture. He also knew that her husband's financial affairs were under Federal investigation. The attorney who prepared the trust agreement and the will submitted an unrefuted certification in support of defendant's motion, which contains the following:
There are two final points I wish to point out to the court. First, at about the time that Adolph Donner consulted with me in February of 1988, about the possibility of modifying his trust agreement, one of his expressed concerns was the difficulty that Martin Prager was having with certain governmental authorities. From what he told me, Martin Prager had been a participant in arranging for capitalizing a corporation in Florida. Apparently, there was some difficulty in arranging for the capitalization. In any event, as a result of that difficulty, Donner advised me that Prager was under investigation by the U.S. Attorney's Office as well as the Securities Exchange Commission. He was very concerned that any gift that he might give to his daughter, Tweedy, might wind up being the subject matter of fines or levies by the government. That was a strong consideration of his.
Second, with regard to the specific provisions of the trust giving a gift to Tweedy (also known as Eileen) Prager on attainment of age 65, death of her spouse and/or divorce, it was not Adolph Donner's intent to absolutely stop his daughter Tweedy from taking her income interest in her one quarter of the residuary. Rather, it was the decedent's intent that she be provided for on age 65 or upon her separation from her husband in the event of a divorce or his demise. The decedent further had desired that his daughter Tweedy not turn over the decedent's hard earned assets to a man whom he felt was a poor money manager. He expressed the view that Prager had exercised bad judgment regarding money management. Moreover, the decedent felt that Prager had more than adequate resources to support his family.
* * * * * * * *
[The decedent] felt any gift ... given to [plaintiff] should be at a time ... when it would be most needed  i.e. when Tweedy no longer had a husband to provide for her or a time of age when it was most likely that he would be retired and his daughter would need an increased source of income. Thus he provided for her to receive income upon age 65. He had absolutely no intent to foster any divorce.
These facts present a reasonable economic basis for the decedent to have withheld the trust income from plaintiff until she reaches age 65 unless she sooner loses her husband, the breadwinner of her family, through either death or divorce. *544 Although we therefore need not consider whether the decedent harbored the motive of encouraging divorce, there is no evidence here that he did. Judge Kentz correctly declined to eliminate the condition from the bequest.
For the same reasons there is no basis for a court to eliminate a provision in the trust agreement that prohibits defendant from exercising its discretion to use trust income and principal to support plaintiff's children unless it is first satisfied that her husband is financially unable to provide such support.
Affirmed.
NOTES
[1] The trust agreement provides that defendant divide the total assets into two unequal trusts: one-fourth of the assets to be used as the principal of a trust for plaintiff and her children, the remaining three-fourths to be used as the principal of a trust for plaintiff's widowed sister and her daughter.