COMMERCE TRUST COMPANY, a Corporation, Trustee under the Last Will and Testament of James W. Weed, Deceased, Plaintiff-Respondent,

v.

Mahlon S. WEED, James W. Weed, Mrs. Blanche Weed Olson, Mrs. Sarah Weed Lewis, Mrs. Helen Weed Gerhard, and Mrs. Dorothy McLaughlin Mitchell, Defendants-Respondents,

Allan Weed McLaughlin, Defendant-Appellant and Respondent,

Mrs. Verle McLaughlin Smith, Sidney M. Weed and Mrs. Grace Weed Tedrick, Defendants-Appellants.

No. 46545.

Supreme Court of Missouri,

Division No. 1.

Nov. 10, 1958.

Motions to Set Aside Decision, for Rehearing or to Transfer to Court en Banc Denied Dec. 8, 1958.

Frank C. Rayburn and John A. Weiss,
Howell, Rayburn & Sanders, Kansas City,

Paul E. Basye, Burlingame, Cal., of counsel, for appellant, Verle McLaughlin Smith.

Richard H. Beeson, David P. Dabbs, Dean F. Arnold, Paul E. Vardeman, Jr., Kansas City, for appellants Sidney M. Weed and Grace Weed Tedrick.

Lathrop, Righter, Blackwell, Gordon & Parker, William M. Stapleton, Kansas City, Fitzgerald, Selleck & Sinclair, Willard M. Sinclair, San Diego, Cal., for Allan Weed McLaughlin, defendant-respondent.

Barnett & Skeer, Paul Barnett, Kansas City, Wash H. Brown, Kansas City, Kan., for respondents McLaughlin et al.

HOLMAN, Commissioner.

In this action for a declaratory judgment, Commerce Trust Company, as testamentary trustee of the trust estate created by the last will and testament of James W. Weed, deceased, sought a construction of said will and a determination of the persons to whom the corpus of said estate should be distributed and the share each should receive. On June 24, 1957, a judgment was entered herein and four of the defendants have appealed therefrom. Since it appears that the "amount in dispute" exceeds $7,500, we have appellate jurisdiction. Article V, Section 3, Constitution of Missouri 1945, V.A.M.S.

On July 22, 1927, James W. Weed, a widower, made his last will. At that time he was 74 years old and had been in failing health for 1½ years. He was ill and confined to his bed when he signed the will and died six days thereafter. Testator was survived by three children and eleven grandchildren (one by adoption).

For many years prior to his death testator operated a business called "Bankers Law Publishing Company." In conducting that business he called upon banks over a wide area and endeavored to sell them advertising pamphlets to be distributed to their customers. During the last twenty years or more of his life he did not main-tain a home of his own (nor any separate office) but would establish headquarters from time to time with one of his children. He traveled almost continuously and would be at his "home" or "headquarters" only two or three days out of every two months.

The will made certain specific bequests, including a gift of one hundred dollars to testator's son James "if he be living, whose address is unknown to me, but who was born in Jewell County, Kansas, about the year 1870; but should my executor be not able to locate my said son within one year after my death, then this bequest shall be null and void * * *."

The residue of the estate was given to Commerce Trust Company in trust for the following purposes: (a) The net income from three houses in Kansas City, Missouri, or the income from the proceeds of the sale of any one or more of them, should be paid to testator's daughter Helen S. Estey for life, with the privilege to such daughter to use one of the houses for a home. (b) The remainder of the income should be divided equally in three parts and paid to his two daughters Blanche Mc-Laughlin and Helen S. Estey, and to his daughter-in-law Rena Weed. "(c) In case of the death of either of my said daughters or my said daughter-in-law, the share of the income to which they or either of them would be entitled, if living, shall be used by the Trustee to support, educate, maintain and care for the lineal descendants of such deceased daughter or daughter-in-law; and in case such deceased daughter or daughter-in-law is not survived by any lineal descendants, then the share of the income to which such deceased daughter or daughter-in-law would be entitled, if living, shall be divided equally among my surviving daughter or daughters and/or daughter-in-law and/or the lineal descendants of any deceased daughter or daughter-in-law and paid to them or used for them as hereinabove provided.

"(d) When both of my said daughters and my said daughter-in-law shall die and

all of the children of my said daughters and daughter-in-law have reached the age of twenty-one (21) years, then this trust shall terminate and the entire trust estate remaining in the hands of the Trustee at that time, whether the same be principal or accumulated income, shall be divided, distributed, and paid over to my lineal descendants, per stirpes.

"(e) In case of the death of both my said daughters and my said daughter-in-law and all of my lineal descendants prior to the final termination of this trust estate, or in case I be not survived by any of said beneficiaries, then upon my death or upon the death of the last of said beneficiaries (whichever *even* [event] happens last) this trust estate shall immediately terminate and the entire trust estate whether the same be principal or accumulated income, shall be divided, distributed and paid over to my heirs at law, whoever they may be at the time of such termination, according to the laws of the State of Missouri then in force."

The will also provided that "If any person or persons who are beneficiaries under this my Last Will and Testament shall at any time attempt or aid in an attempt to oppose the administration of this will to probate or to have the same set aside or declared invalid, then and in that event, such beneficiary or beneficiaries shall by that act forfeit all right or title to any part of my estate and any and all bequests I have made to them or their descendants under this will, shall be null and void and my estate shall be distributed in the same manner as it would be distributed under the terms hereof if that person or persons had died prior to my death without leaving lineal descendants."

After testator's death, one of his daughters, Helen Weed Estey, married George T. Carver and died on February 28, 1934, without issue. Carver subsequently married Leola Carver and died on January 11, 1953, without issue. Leola survived and is a defendant herein.

Another daughter, Blanche Weed McLaughlin, died on April 18, 1939, and left surviving her husband, A. B. McLaughlin, two sons, Allan and George, and an adopted daughter, Dorothy McLaughlin Mitchell. George McLaughlin died October 6, 1944, without issue, but was survived by his widow, now Verle McLaughlin Smith.

Testator's son, James H. Weed, died February 13, 1942, and left surviving his wife Emma Weed, and three children, Sidney M. Weed, Hazel Weed Ellis, and Grace Weed Tedrick. Hazel died on June 25, 1945, without issue but was survived by her husband, George Ellis.

Another son, Fred Weed, died prior to testator's death and was survived by his widow, Rena Weed, two sons, Mahlon S. and James W., and three daughters, Blanche Olson, Sarah Lewis, and Helen Gerhard.

All of the persons heretofore named (who were alive on February 1, 1956, the date this suit was instituted) were made defendants herein. Emma Weed and George Ellis defaulted. All of the other parties appeared in the trial court and claimed a share of the trust assets.

James H. Weed was born of testator's first marriage. The record does not disclose how that marriage terminated but in 1875 testator married Maggie A. Jones and the three other children heretofore named were born of that marriage. Maggie died in 1910. Testator had not been in contact with his son James for a long time and (according to the will) was not sure that he was alive. None of the other children or grandchildren had ever heard of James until the testator's will was read. Actually, in 1927, James resided in Springfield, Missouri, where he held a responsible position with the Frisco railroad. He learned of his father's death from an item that appeared in a Kansas City newspaper.

On May 18, 1928, James H. Weed filed a suit to contest testator's will, alleging therein that testator was of unsound mind

and was also subjected to undue influence at the time of signing the alleged will. That case was thereafter settled by the payment to James H. Weed of $5,000 from the assets of the estate and the will was thereafter established by a judgment of the Circuit Court of Jackson County, Missouri, in the said will contest action.

It is agreed by all parties that the trust estate terminated on October 25, 1955, the date of the death of Rena Weed. At that time the assets in the trust totaled approximately $110,000.

The questions presented for determination in the trial court were: (1) Was the remainder contingent or did it vest at the death of testator? (2) Is the adopted child, Dorothy McLaughlin Mitchell, a lineal descendant of testator? and (3) Did the action of James H. Weed in contesting the will preclude his children (admittedly lineal descendants) from sharing in the distribution of the trust assets?

The findings and conclusions of the trial court were:

1. That "the remainders created by Paragraph Sixth (d) of testator's Last Will and Testament were contingent and not vested until October 25, 1955, when such remainders vested in testator's lineal descendants surviving at the termination of the trust.

2. "According to the law and to the intention of the testator Dorothy McLaughlin Mitchell, the adopted daughter of Blanche Weed McLaughlin, is entitled to inherit as a lineal descendant of testator."

3. That James H. Weed had reasonable and probable cause to believe that his father's will was invalid and hence had probable cause to file the will contest action, but, nevertheless, "under the terms of the testator's will, James H. Weed, by his action taken in attempting to and contesting testator's will, divested himself and his heirs from any right to share in the estate."

4. That "the defendants, Mrs. Leola Carver, A. B. McLaughlin, Mrs. Verle McLaughlin Smith, Mrs. Emma Weed, and George Ellis are not entitled to share in the distribution of corpus and income upon termination of the trust estate, said persons not being lineal descendants of testator."

In accordance with its findings the court entered a judgment directing that the trustee "distribute the corpus and undistributed income of the trust estate in its possession on the date of such distribution as follows: One-tenth thereof to each of the following defendants: Mahlon S. Weed, James W. Weed, Mrs. Blanche Weed Olson, Mrs. Sarah Weed Lewis, and Mrs. Helen Weed Gerhard. One-fourth thereof to each of the following defendants: Allan Weed McLaughlin and Dorothy McLaughlin Mitchell."

Upon this appeal the seven defendants named in the judgment as distributees are the respondents. Although the judgment was adverse to them, defendants Leola Carver, A. B. McLaughlin, Emma Weed, and George Ellis did not appeal. The appellants are Allan Weed McLaughlin (appellant and respondent), Verle McLaughlin Smith, Sidney M. Weed and Grace Weed Tedrick.

We will briefly state the various contentions of the parties upon this appeal. The respondents (except for Allan McLaughlin) seek an affirmance of the judgment in its entirety. As appellant, Allan contends that the court erred in holding that the child, Dorothy, adopted by a daughter of the testator, is a lineal descendant of the testator within the meaning and intent of that phrase as used in Article Sixth (d) of the will. The primary contention of appellant, Verle McLaughlin Smith, is that the court erred in holding that the remainders created by the will were contingent and did not vest until October 25, 1955. She also complains of the ruling that Dorothy Mitchell is entitled to a share of the trust estate. Appellants Sidney M. Weed and Grace Weed Tedrick contend (1) that

good faith and reasonable cause on the part of James H. Weed in filing the will contest suit was sufficient to avoid the forfeiture clause of the will, and that decisions of this court to the contrary should not be followed; (2) that even under the present decisions of this court said appellants are not barred by the action of James H. Weed because they do not take through him; and (3) that by their participation in the suit seeking authority to settle the will contest respondents are estopped to assert the forfeiture clause against those appellants and, by certain other conduct, have waived the right to so assert that provision.

The first question we will consider is whether the remainder created by testator's will vested in his lineal descendants as they existed at the date of his death, or, was it a contingent remainder which did not vest until the termination of the trust? If we rule that the remainder vested at the time of testator's death, then the heirs, devisees and surviving spouse of lineal descendants who survived testator but who died prior to the termination of the trust would share in the distribution of the trust estate.

▮ In the construction of wills our primary duty is to determine "the true intent and meaning of the testator." Section 474.430 (unless otherwise indicated, all statutory references are to RSMo 1949, V.A. M.S.). All technical rules of construction are subservient to the paramount rule that the intention of the testator shall control unless it violates some established rule of law. Legg v. Wagner, Mo.Sup., 155 S.W. 2d 146. In performing our task we must consider the will as a whole and not give undue preference to any particular clause. "When the intent of the testator is found, the proper construction of the will is solved." McMillan v. Barnard Free Skin & Cancer Hospital, 304 Mo. 635, 264 S.W. 410, 413. Moreover, we are mindful that "The infinite variety of expressions and the differing shades of meaning so often attached to identical words or phrases when employed by the makers of wills in a context and under circumstances peculiar to the context of the will of each testator and the circumstances under which it was written make prior decisions construing similar words or phrases of far less value as precedent than those of other fields of litigated controversies." Hereford v. Unknown Heirs, etc., 365 Mo. 1048, 292 S.W.2d 289, 293.

We have considered the will from its four corners and (for reasons that will hereafter appear) have concluded that the testator obviously intended that at the termination of the trust the trust assets should vest in his lineal descendants surviving at that time and should be "divided, distributed, and paid over" to them "per stirpes."

In examining the will as a whole it is apparent that the testator's overall scheme or plan involved several objectives. They were: (1) As indicated by clause "Sixth" (a), he desired to make special provision for a home and income for his afflicted daughter, Helen, who suffered from a mental disease of a permanent nature; (2) he desired that his two daughters and his recently widowed daughter-in-law (the mother of five of his grandchildren) have the security of an income from the trust estate as long as they should live; (3) in the event of the death of any of those three primary income beneficiaries, he desired that her share of the income be paid to any lineal descendants she might leave surviving (Sixth (c)) which payment, in any event, must continue until (Sixth (d)) "all of the children of my said daughters and daughter-in-law have reached the age of twenty-one (21) years"; and (4) he desired that the trust corpus should be "paid over" to his lineal descendants.

It is apparent that testator intended that the beneficiaries of his estate should be limited to those who were within the family blood stream. (In making that statement we do not intend to depreciate the claim of Blanche's adopted daughter Dorothy, who, the evidence indicates, testator regarded as a grandchild.) No item of property or

other beneficial interest was bequeathed to any person who was not a lineal descendant of testator except for a life income to the widow of his son Fred, who had died (leaving five children) about a year before the will was made. Since testator carefully limited his beneficiaries to blood relatives, and provided in the will that at the termination of the trust "the entire trust estate remaining in the hands of the trustee at that time * * * shall be divided, distributed, and paid over to my lineal descendants," it would seem that an interpretation which would require the payment of substantial distributive shares to at least four persons who were not blood relatives of testator would be contrary to his general testamentary plan. For example, it would appear inconceivable that testator ever intended to draft his will in such a manner that Leola Carver (the widow of a man whom Helen married after testator's death) would share in the distribution of the assets upon termination of the trust.

Furthermore, if the remainder vested at the death of testator, then one-half thereof was vested in two lineal descendants who could never, by any possibility, live to enjoy their inheritance, since the death of the two daughters was a condition precedent to the distribution of the remainder. It is conceded that it is not legally impossible for a man to provide that a life estate shall be vested in a certain person and that the remainder shall vest in the same person. See Evans v. Rankin, 329 Mo. 411, 44 S.W. 2d 644. However, such a disposition is quite rare and nothing in the instant will would indicate an intent on the part of the testator to so provide. The only logical reason for a testator to make such a disposition of a remainder would be for the purpose of granting to the life tenant the privilege or responsibility of conveying or devising the said remainder. Testator did not need any assistance of that nature as he obviously knew that he wanted this remainder to be distributed to his lineal descendants. Under the instant circumstances we cannot attribute to testator an intent

that the remainder of his trust estate vest, at the time of his death with the result that all of said remainder might have been transferred to strangers of his blood before the termination of the trust.

In line with the foregoing it may be noted that long before testator's death he appeared to have lost all interest in his son James and hence made no specific provision for him in the will except a conditional bequest of $100. It would seem clear that that bequest was all that testator intended that James receive from his estate. However, if the remainder vested at the death of testator, one-fourth of the remainder would have vested in James and (except for the fact of filing the will contest suit) he could have conveyed or devised the same, or, in fact (since his death was not a condition precedent to distribution) could possibly have lived to actually receive said interest. Such a result would have been in conflict with the apparent intent of the testator.

Perhaps the most significant provision of the will in regard to testator's intent as to the time the remainder should vest is the following: "(e) In case of the death of both my said daughters and my said daughter-in-law and all of my lineal descendants prior to the final termination of this trust estate * * * then * * * upon the death of the last of said beneficiaries this trust estate shall immediately terminate and the entire trust estate whether the same be principal or accumulated income, shall be divided, distributed and paid over to my heirs at law, whoever they may be at the time of such termination, according to the laws of the State of Missouri then in force." As indicated, that part of the will makes provision for the distribution of the trust assets to testator's heirs at law in the event of the death of all of his lineal descendants prior to the termination of the trust. It is readily apparent that if the remainder vested in his lineal descendants at the date of testator's death, then testator would have no right to provide for the distribution of the remainder in case said lin-

eal descendants died during the pendency of the trust. In that situation the remainder interests could have been conveyed by said descendants during their lifetimes or, if not so conveyed, would have descended to their heirs or devisees at their deaths. Since testator placed the instant provision in his will it would seem obvious that he had no intention of providing that the remainder vest prior to the termination of the trust.

Appellant Verle McLaughlin Smith contends that she is entitled to share in the distribution of the trust estate because the remainder vested at the death of testator, at which time her deceased husband was alive. In support of her position she has called our attention to certain well-established rules that are sometimes applied in construing wills. She points to the basic rule that the law favors vested estates and in case of doubt as to a testator's intention, the doubt should be resolved in favor of a vested rather than a contingent remainder. Sanders v. Jones, 347 Mo. 255, 147 S.W.2d 424. We are also reminded of the rule that unless the testator has clearly manifested his intention to the contrary, the persons who take under his will as members of a class are determined as of the date of his death and the remainder is said to vest at that time. Gardner v. Vanlandingham, 334 Mo. 1054, 69 S.W.2d 947.

The difficulty with said appellant's position is that the rules mentioned, and other auxiliary rules of construction, are intended to be used only as an aid in determining the intent of the testator. Where, as in the instant case, the intent may be clearly ascertained from the will itself, rules of that kind have little, if any, application. Verle also contends that the provision in Article Sixth (e), "or in case I be not survived by any of said beneficiaries" (life tenants and lineal descendants) the trust estate should be paid over to testator's heirs at law, clearly shows an intention that the interest should vest on the date of testator's death. We do not so construe the provision. In the first place

this was evidently a stock provision inserted by the attorney who drafted the will, in an abundance of precaution, because testator could not have reasonably thought that all of said beneficiaries might die before he did. At that time he was on his death bed and had fourteen beneficiaries living, most of whom were young people. Moreover, as a practical matter, it seems to us that if all of the trust beneficiaries had predeceased testator the trust estate would not thereby have terminated because it would never have come into existence. In all likelihood the executor would simply have distributed the estate to testator's heirs at law at the completion of the administration. At any rate, we hold that under the circumstances presented, the provision in question, when considered in connection with the will as a whole, does not indicate an intention on the part of the testator that the remainder vest in his lineal descendants at the time of his death.

As previously indicated, we rule that the remainder under consideration was contingent until the date of the termination of the trust when it vested in testator's lineal descendants surviving at that time. While, as heretofore stated, precedents are often of little value in this type of case, we think the following cases (at least in a general way) tend to support the conclusion we have reached: Taylor v. Hughes, 363 Mo. 389, 251 S.W.2d 94; St. Louis Union Trust Co. v. Herf, 361 Mo. 548, 235 S.W.2d 241; Kingston v. St. Louis Union Trust Co., 348 Mo. 448, 154 S.W.2d 39; Carter v. Boone County Trust Co., 338 Mo. 629, 92 S.W.2d 647; St. Louis Union Trust Co. v. Greenough, Mo.Sup., 282 S.W.2d 474; Irvine v. Ross, 339 Mo. 692, 98 S.W.2d 763; and Coley v. Lowen, 357 Mo. 762, 211 S.W.2d 18.

Is Dorothy McLaughlin Mitchell a lineal descendant of the testator within the meaning and intent of that phrase as used in Article Sixth (d) of the will? A. B. and Blanche McLaughlin adopted Dorothy, when she was just a few days old, by a

deed of adoption executed at Sedalia, Missouri, on May 12, 1909, and recorded the same day. Dorothy was reared by the McLaughlins as their child and testator apparently had the same affection and regard for her as he had for his other grandchildren. However, after the adoption of Dorothy, two natural sons were born to the McLaughlins, one of whom, Allan, is an appellant herein and is opposing Dorothy's claim to a distributive share of the trust assets.

A determination of the question presented will require a consideration of certain statutes relating to adoptions and the inheritance rights of adoptive children. Under the statutes in effect at the time the foregoing deed was executed an adopted child would inherit from his adoptive parents, but the section relating to the rights of adopted children contained the provision that it "shall not extend to other parties, but is wholly confined to parties executing the deed of adoption." Section 1673, RSMo 1909. It is conceded that under the provisions of that statute Dorothy would not have been a lineal descendant of testator.

However, in 1917, the legislature enacted an adoption code which provided for the adoption of children by decree of the juvenile division of the circuit court and which radically changed the rights of adopted children. Laws of Mo.1917, pp. 193–195. Section 1677 thereof provided that "When a child is adopted in accordance with the provisions of this article, all legal relationship, and all rights and duties, between such child and its natural parents shall cease and determine. Said child shall thereafter be deemed and held to be for every purpose, the child of its parent or parents by adoption, as fully as though born to them in lawful wedlock." That section did contain one limitation upon the right of inheritance as indicated by the following: "Provided, however, that neither said adopted child nor said parents by adoption shall be capable of inheriting

from or taking through each other property expressly limited to heirs of the body of such child or parent by adoption." In construing Section 1677 we have said that "The Legislature had a right to and did in strong and emphatic language change the blood stream of an adopted child. Under our present statutes an adopted child's relations with its natural parents cease; and by law it becomes the child of its adopting parents *for every purpose* as fully as though born to the adopting parents in lawful wedlock. In other words, the adopted child is taken out of the blood stream of its natural parents and placed, by the operation of law, in the blood stream of its adopting parents * * *." St. Louis Union Trust Co. v. Hill, 336 Mo. 17, 76 S.W.2d 685, 689. We have also stated that said section, "on the subject of *consequences of adoption,* in our opinion, makes respondent [adopted child] in effect a *lineal heir* of his adoptive grandfather." Robertson v. Cornett, 359 Mo. 1156, 225 S.W.2d 780, 786.

This court, however, in 1941, held that the 1917 adoption law was intended to apply prospectively and only to persons adopted according to its provisions and that it did not enlarge the rights of persons adopted (as was Dorothy) under the prior law. McIntyre v. Hardesty, 347 Mo. 805, 149 S.W.2d 334.

Probably as a result of the McIntyre decision the legislature in 1943 enacted what is now Section 453.150, which reads, "Any person adopted by deed of adoption or agreement of adoption in writing prior to 1917 and wherein said instrument was filed for record prior to July 1, 1917, shall hereafter be deemed and held to be for every purpose the child of its parent or parents by adoption as fully as though born to them in lawful wedlock, and such adoption shall have the same force and effect as an adoption under the provisions of this chapter, including all inheritance rights." By said enactment, the intent of the legislature appears to have been to place children legally adopted prior to 1917 on

a parity with children adopted under the 1917 law and thereafter.

In 1947 the legislature removed the last vestige of distinction between the inheritance rights of an adopted child and one born in lawful wedlock when it removed the proviso from what was originally Section 1677 of the 1917 Act and re-enacted the section, now Section 453.090, which contains the following: "Said adopted child shall be capable of inheriting from and taking through his parent or parents by adoption property ·limited expressly to heirs of the body of such parent or parents by adoption."

"In the matter of construing the rights of an adopted child to take under a will, it should be borne in mind that it is not a question of the right of an adopted child to inherit, but simply a question of the testator's intention with respect to those who are to share in his estate." 1 Am. Jur., Adoption of Children, Section 64, p. 665. Upon this appeal, Allan contends that it was the plain intent of the will to exclude Dorothy as a lineal descendant of the testator, and, since she was not a lineal descendant at the time the will was executed, ·and since testator is presumed to have ·made his·will in the light of the statutory ,law existing at that time, testator could not have had any intent except to exclude Dorothy as a lineal descendant.

We have read the many cases cited in the briefs on both sides and have considered the various contentions of counsel for each of these parties as to why the judgment upon this phase of the case should or should not be affirmed but we deem it unnecessary to extend this already lengthy opinion by a detailed discussion thereof. We have concluded that, when viewed in its proper perspective, and, in final analysis, the problem is actually not complex or difficult to solve.

■ As heretofore stated, testator intended to create a contingent remainder which ·would vest in his lineal descendants on the date of the termination of the trust. At the time of making his ·will he knew that that date was apt to be many years in the future and that marriages, deaths, births and perhaps adoptions would likely occur before the termination date, which events would change the personnel of the group that would eventually make up the class designated as "lineal descendants." We do not find anything in the will to indicate that testator had any specific intent to either include or exclude Dorothy as a lineal descendant. But we do find that the testator intended that the trust assets were to vest in· and be divided among those persons who were his lineal descendants on the termination date and that the qualifications of those who were to make up that class were to be judged according to their situation on that date. In the light of the Acts of 1943 and 1947, there can be no question but that Dorothy was a lineal descendant of the· testator (for purposes of inheritance) on October 25, 1955, the date the trust estate terminated, and hence we rule that she is entitled to share in the distribution of the trust assets.

Counsel for Allan, however, contend that the Acts of 1943 and 1947 could have -no effect upon the vital issue as to the testator's intent as expressed in a will which was executed and probated in 1927. The answer to that contention is (as we have already indicated) that testator was not required to have (and did not have) a specific intent that any particular individual should· share in the distribution of the trust assets. He merely intended that the estate be shared by such persons (whoever they might be) as could qualify as members of the class designated as "lineal descendants" on the date the trust terminated.

■ Moreover, we have the view that our ·ruling that the Acts of 1943 and 1947 are applicable in determining Dorothy's qualifications as a lineal descendant in 1955 would not cause those Acts to.be considered unconstitutional as violative of the due proc-

ess clause or the provision against retrospective legislation. Amendment XIV, Section 1, Constitution of the United States; Article 1, Section 13, Constitution of Missouri 1945, V.A.M.S. It should be noted that there is nothing contained in either of the Acts under consideration which would indicate an intent to disturb any rights or titles that had vested before the effective date of said Acts. A statute is not retrospective in its operation unless it impairs some vested right. McManus v. Park, 287 Mo. 109, 229 S.W. 211. We have said that "By a 'vested right' we mean one which is absolute, complete, and unconditional (Orthwein v. [Germania Life] Insurance Co., 261 Mo. [650] loc. cit. 665, 170 S.W. 885), to the exercise of which no obstacle exists, and which is immediate and perfect in itself and not dependent upon a contingency." State ex rel. Wayne County v. Hackman, 272 Mo. 600, 199 S.W. 990, 991. It has also been said that "A private right may be interfered with so long as it is not vested (Cooley, Constitutional Limitations [8th Ed.] 749), and a right is not vested unless it is something more than a mere expectation as may be based upon an anticipated continuation of the present general laws." United States Light & Heat Corp. v. Niagara Falls Gas & Electric Light Co., 2 Cir., 47 F.2d 567, 570. The following also appears applicable: "Where a provision for a devise or bequest depends on the happening of some event or contingency which from its nature will not happen until after the testator's death, such provision operates according to the law as it exists when such event or contingency happens, although the law then existing was not passed until after the testator's death, unless an intent to the contrary appears." 95 C.J.S. Wills § 587, p. 726. Since none of the persons who hoped to share these trust assets as "lineal descendants" had any vested right thereto until the trust terminated, their contingent remainder did not come within the protection of the foregoing constitutional prohibitions.

As we have heretofore stated, the testator's will contained a provision that any person contesting same would forfeit "all right or title to any part of my estate and any and all bequests I have made to them or their descendants under this will, shall be null and void and my estate shall be distributed in the same manner as it would be distributed under the terms hereof if that person or persons had died prior to my death without leaving lineal descendants." The final point we will consider is the effect of that provision upon the right of appellants Sidney M. Weed and Grace Weed Tedrick (hereinafter referred to as appellants) to share in the distribution of the trust estate. Those appellants are lineal descendants (children) of James H. Weed who admittedly filed a suit to contest his father's will. The trial court found that James had reasonable and probable cause to believe that his father's will was invalid but held that that fact was not a ground for the nonenforcement of the forfeiture penalty under the rule prevailing in this state, and that by filing the will contest James had divested himself and his children from any right to share in the estate.

There can be no question but that forfeiture provisions of the type we are now considering have generally been held not to be contrary to public policy and hence are considered valid and enforceable. However, a number of states have adopted an exception to the general rule, namely, that a "no-contest" provision will not be enforced where the action was brought in good faith and with probable cause to believe that the will was invalid. Appellants recognize, however, that this court has adopted the rule that the provision is enforceable even though the proceedings were begun in good faith and with probable cause. In re Chambers' Estate, 322 Mo. 1086, 18 S.W.2d 30, 67 A.L.R. 41; Rossi v. Davis, 345 Mo. 362, 133 S.W.2d 363, 125 A.L.R. 1111. Appellants request that those decisions be re-examined and overruled. They say that said decisions are basically unsound and have been weakened by the

fact that the original decision (Chambers) was largely based upon the Iowa case of Moran v. Moran, 144 Iowa 451, 123 N.W. 202, 30 L.R.A.,N.S., 898, which decision has since been overruled in the case of In re Cocklin's Estate, 236 Iowa 98, 17 N.W.2d 129, 157 A.L.R. 584. In that connection we observe that while the Moran case has been overruled, as stated, it was only one of many authorities relied upon by this court in reaching its conclusion in the Chambers case.

"The reason generally advanced by the authorities in support of the view that the 'no contest' condition should be held ineffective where the contest is based on good faith and probable cause is that a sound public policy demands that the truth of a disputable claim should be ascertained as the law provides, and that since courts are created to administer justice there should be no penalties inflicted upon those who seek their performance of that function. It is argued that if a will is actually invalid, a strict and literal application of such 'no contest' clause would tend to prevent the establishment of this fact, and thus thwart the course of justice. The persons, who may have been instrumental in the creation of the invalid document and who were to profit most by .its admission to probate, would be provided a helpful cover for their wrongful acts. Hartz' Estate v. Cade, 1956, 247 Minn. 362, 77 N.W.2d 169; Whitehurst v. Gotwalt, 189 N.C. 577, 127 S.E. 582; In re Friend's Estate, 209 Pa. 442, 58 A. 853, 68 L.R.A. 447; Rouse v. Branch, 91 S.C. 111, 74 S.E. 133, 39 L.R.A.,N.S., 1160; Sherwood v. McLaurin, 103 S.C. 370, 88 S. E. 363; Tate v. Camp, 147 Tenn. 137, 245 S. W. 839, 26 A.L.R. 755; Dutterer v. Logan, 103 W.Va. 216, 137 S.E. 1, 52 A.L.R. 83; In re Will of Keenan, 188 Wis. 163, 205 N. W. 1001, 42 A.L.R. 836; In re Estate of Cocklin, 236 Iowa 98, 17 N.W.2d 129, 157 A.L.R. 584." Womble v. Gunter, 198 Va. 522, 95 S.E.2d 213, 216.

The quoted view is supported by some of the text writers, as indicated by the following: "The policy of allowing such a condi-tion [against contest], where there is probable cause for contesting the will, is unquestionably a bad one. In cases of fraud and undue influence, it offers a most effective means of terrorizing the heirs and next of kin who are given any substantial benefits under the will, and thus preventing them from contesting the will." Page on Wills, Lifetime Edition, Vol. 3, § 1306, p. 818.

In the Chambers and Rossi cases, supra, we quoted at length from various leading cases in order to illustrate the reasoning supporting the view that good faith and probable cause should not protect the contesting legatees from the effects of the "no-contest" provision. No point would be served by requoting from those opinions herein. However, we note that since the adoption of the opinions in Chambers and Rossi, the American Law Institute has adopted the same view, as indicated by the following rule and the comments thereon:

"Restraints On Will Contests. (1) An otherwise effective condition precedent, special limitation, condition subsequent or executory limitation which is designed to prevent the acquisition or retention of a devised interest in land or in things other than land in the event of a contest of the will in which such devise is made is valid. * * *

"*Comment: a. Rationale.* A will is normally contested on some one or more of six grounds, namely, lack of testamentary capacity, fraud, undue influence, improper execution, forgery, or subsequent revocation by a later will or codicil. In order to avoid the danger to his attempted dispositions presented by a possible will contest, the testator may endeavor to restrain his devisees from undertaking such a challenge. A restraint against contest also serves purposes other than preserving the particular dispositions of the testator against attempted overthrow by a disappointed heir, seeking to gain an unintended enrichment at the expense of the other beneficiaries. It tends to lessen the wastage of the estate in litiga-

tion. It lessens the chance of increasing family animosities by besmirching the reputation of the testator when he is no longer alive to defend himself. It discourages the contesting of wills as a means of coercing the other beneficiaries into the making of a settlement. Suits brought for this purpose are most easily premised upon issues which involve uncertain states of fact, a situation normally existing in claims of fraud, undue influence and lack of testamentary capacity. By discouraging these types of contests, the maintenance of such coercive operations is discouraged. Hence the balance of social policy is normally in favor of the validity of the restraint. The person affected by the restraint always retains the right to litigate, and if in such litigation it is established that the proffered document was not the will of the deceased, the clause and the will both fall. If he litigates unsuccessfully and then seeks to claim under the very will that he opposed, it is not unfair that he should suffer the penalty imposed by the testator for such conduct. * * *

"*c.* A restraint upon contest, general in form, may be validly applied to any attack upon the will which is designed to prevent its establishment upon the ground of improper execution, undue influence, fraud or lack of testamentary capacity. * * *

"*g.* The rule stated in Subsection (1) validates restraints against contest without regard to the existence of probable cause for the bringing of the contest. If the existence of probable cause were recognized as an excuse for non-performance of the condition, full effect to the expressed desire of the testator would be denied in a case where that desire accords with social policy." Restatement, Property, Chapter 33, Section 428, pp. 2499 et seq.

Among the cases supporting the view we have heretofore adopted are Rudd v. Searles, 262 Mass. 490, 160 N.E. 882, 58 A.L.R. 1548; Smithsonian Institution v. Meech, 169 U.S. 398, 18 S.Ct. 396, 42 L.Ed. 793; Bradford v. Bradford, 19 Ohio St. 546, 2 Am.Rep. 419; Schiffer v. Brenton, 247

Mich. 512, 226 N.W. 253; Barry v. American Security & Trust Co., 77 U.S.App.D.C. 351, 135 F.2d 470, 146 A.L.R. 1204; Burtman v. Butman, 97 N.H. 254, 85 A.2d 892; Alper v. Alper, 2 N.J. 105, 65 A.2d 737, 7 A.L.R.2d 1350; Elder v. Elder, R.I., 120 A.2d 815; In re Kitchen's Estate, 192 Cal. 384, 220 P. 301, 30 A.L.R. 1008.

For a general discussion of the question and a review of the cases on each side of the controversy, see the following annotations: 42 A.L.R. 847; 67 A.L.R. 52; 125 A.L.R. 1135; 146 A.L.R. 1211; 157 A.L.R. 596. See also, 57 Am.Jur., Wills, Section 1512, p. 1025, and Section 1515, p. 1028.

■ We recognize that the question as to whether a "no-contest" provision in a will should be enforced, despite the presence of good faith and probable cause, is, and for a long time has been, a debatable one. We further recognize that the view that the forfeiture provision should not be enforced where probable cause exists is supported by logical reasons and respectable authority. Many who have written upon the subject concede that a somewhat logical and convincing opinion may be constructed supporting either view of the question. It should be noted, however, that this court did not take a position on the question until it had thoroughly considered the authorities pro and con and the reasons supporting each view. In the Chambers and Rossi cases the court reviewed substantially all of the cases that had considered the question up to the time of those decisions. As heretofore indicated, those decisions represent the considered view of this court that "no-contest" provisions should be enforced without regard to any exception based upon the good faith and probable cause of the contestant. We see no reason for departing from that rule. It rests upon a sound logical foundation and is supported by substantial authority. No new arguments have been advanced which are sufficient to demonstrate that Chambers and Rossi were unsound in the first instance. There has been no suggestion of any subsequent changes in our

economic or social conditions of a nature that might call for a change in the rule we have adopted. For the reasons indicated, we reaffirm the Chambers and Rossi decisions.

■ Appellants next contend that the "no-contest" clause (even though enforced without the probable cause exception) would not bar them from sharing in the distribution of the trust assets because they take as lineal descendants of the testator and not through their father. It is suggested that James H. Weed (contestant) could not have forfeited any of appellants' rights as he died long before title to the trust remainder vested.

■ We do not agree with the contention that the forfeiture provision should not be applied to appellants. It is not a question of the power of the contestant to forfeit the rights of his children. Our task is to ascertain and give effect to the testator's intention in regard to the provision in question. We recognize that a forfeiture clause is to be strictly construed, but we should not place a strained or overtechnical construction upon the language used in order to enable a beneficiary to take under the will and thus ignore the condition imposed and accordingly refuse to give effect to the intent of the testator.

In the instant provision the intent of the testator is clearly expressed. It reads, in part (substituting the name of the one who actually contested the will): "Any and all bequests I have made to [James H. Weed] or his descendants under this will, shall be null and void and my estate shall be distributed in the same manner as it would be distributed under the terms hereof if [James H. Weed] had died prior to my death without leaving lineal descendants." Either of two parts of the quoted provision is sufficient to bar appellants. It is first stated that all bequests to descendants of any contestant shall be null and void. Testator is bound to have known that the descendants of any of his children who

might contest the will would also be his (testator's) descendants. Thereafter it is provided that the estate be distributed in the same manner as would have been done if the contestant (James H. Weed) had died prior to the testator without leaving lineal descendants. Certainly, if James H. Weed had died prior to the testator and left no descendants, these appellants would not be entitled to receive any share of the estate under the clause providing for distribution of the trust assets (upon termination of the trust) because they would not have been in existence and hence would not have been lineal descendants of the testator upon the date the remainder vested. We rule this point against appellants. See Rossi v. Davis, supra, and Alper v. Alper, 2 N.J. 105, 65 A.2d 737, 7 A.L.R.2d 1350.

The remaining contentions of appellants relate to questions of estoppel and waiver which are based upon the fact that appellants were made (or permitted to become) parties in certain legal proceedings relating to the instant estate. We will briefly refer to those cases, all of which were filed in the Circuit Court of Jackson County, Missouri.

In order to consummate the settlement of the will contest case, Rena Weed and all of testator's children and grandchildren (including appellants) joined as plaintiffs in an action against the executor and trustee of the estate in which the court was asked to authorize the executor-trustee to pay James $5,000 for that purpose. The court so decreed. Thereafter, in July 1929, appellants joined as plaintiffs with Helen, Blanche, Rena and Rena's children in an action to construe the will wherein the trustee and Blanche's minor children were defendants. In October of the same year another action to construe the will was filed by Commerce Trust Company as plaintiff and wherein appellants, together with the parties in the prior action, were made defendants. In July 1934, Blanche McLaughlin filed an action to construe the will in which she listed appellants, the trustee, and others (except Helen, who was deceased):

mentioned in the prior action, as defendants. Another action to construe the will was filed in July 1935 by Commerce Trust Company in which the defendants were Blanche, Rena and testator's grandchildren and great grandchildren.

Appellants contend that because they were parties in the five actions mentioned, and respondents did not therein raise the point that appellants had no interest in the trust estate, respondents are estopped to assert the forfeiture provision against appellants. They also contend that respondents have waived that provision. For reasons hereafter briefly noted, we have concluded that there is no merit in those contentions.

In connection with the question presented, we note that one of the trust officers for Commerce Trust Company testified that it was the established policy of the company, in actions to construe a will, to join all persons who might possibly have an interest regardless of the opinion of its officers as to whether said parties actually had such an interest. We also observe that the most that can be said against respondents is that they permitted appellants to be joined with them, either as plaintiffs or defendants, without objecting to the fact that they were included in the group. While we need not decide that point, we observe that under the instant circumstances it is doubtful that there was any duty upon respondents in those actions to raise any question as to the applicability of the forfeiture provision to appellants.

 We can see how the fact that they were parties in the foregoing cases may have caused appellants to hope (and possibly expect) that they would someday share in the distribution of the estate of the testator. However, one difficulty with their assertion of estoppel is that they did not change their position or sustain any detriment as a result thereof. "* * * there must have been some definite act on the part of the party claiming the estoppel, in reliance on the representation of the es-

topped party, which has changed his condition for the worse. He must have suffered a legal detriment." State ex inf. McKittrick, ex rel. City of California v. Missouri Utilities Co., 339 Mo. 385, 96 S.W.2d 607, 615, 106 A.L.R. 1169. Appellants could not have changed their position "for the worse" as a result of those cases because their right to participate in the distribution of the trust estate was terminated at the instant their father filed the will contest suit. There was nothing they could have thereafter done, or refrained from doing, that would have reinstated or validated their right to claim a share of those assets. But appellants contend that because they were led to believe that they would share in the trust remainder they forbore the right to oppose the settlement of the will contest case; that they could have "blocked" the settlement and if their father had won "these appellants would then be blessed by the fortuitous circumstance of having a rich rather than a poor father, and could inherit from him upon his death." We think it apparent that such was no legal detriment. Appellants had no vested right to inherit from their father and hence had no legal interest in his case. Moreover, if they had sought to oppose the settlement the court would then have ruled that appellants had no interest in the Weed estate and hence could not have been heard to oppose the settlement.

It should also be noted that at the time all of the aforementioned suits were pending Allan W. McLaughlin was a minor and was represented therein by either a next friend or guardian ad litem. It would seem clear that the person representing said minor could not legally have taken any action that would have constituted an estoppel or waiver that would have been binding upon his ward.

"Waiver" has been defined as "the intentional relinquishment of a known right." Lucas Hunt Village Co. v. Klein, 358 Mo. 1054, 218 S.W.2d 595, 599. And, to constitute a waiver, "there must be a clear, unequivocal and decisive act of the party

showing such purpose, and so manifestly consistent with and indicative of an intention to waive that no other reasonable explanation is possible." 218 S.W.2d loc. cit. 599. Considered in connection with the quoted requirements we have the view that the failure of respondents to object to the inclusion of appellants in the said suits was not such a decisive act as would constitute a waiver of the "no-contest" clause. Moreover, it should perhaps be mentioned that there is authority for the view that a forfeiture clause of this nature cannot be waived. "These beneficiaries say that they are the only persons who could claim a forfeiture, and as they are all in court, requesting a division of the property in pursuance of the provisions of the will, they must be held to have waived the right to claim a forfeiture, and to have acquiesced in the execution of the will as a valid will. The court has before it a will providing for a forfeiture, and facts showing the existence of the forfeiture. Under those conditions, the court could not permit the testator's expressed will to be rendered nugatory by the consent of his beneficiaries. Its duty is to see that the testator's intention is consummated. The clause of forfeiture is one beneficiaries cannot waive. They may waive a known right of their own. They cannot waive a right which was exclusively the testator's, and one which he made a condition of his bounty and a guide to the devolution of his estate." South Norwalk Trust Co. v. St. John, 92 Conn. 168, 101 A. 961, 964.

As indicated, we rule that respondents are not estopped to assert the "no-contest" provision and have not waived it.

The judgment is affirmed.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.