Donald E. WILLSON, Appellant,

v.

Kenneth G. CARMICHAEL, et al., Respondents.

No. WD 34782.

Missouri Court of Appeals, Western District.

Jan. 10, 1984.

Motion for Transfer to Supreme Court Overruled Feb. 28, 1984.

Application to Transfer Denied March 20, 1984.

George Lehnen, III, Richmond (Hill, Lehnen & Driskill, Richmond, of counsel), for appellant.

A.V. McCalley, Richmond, for respondents.

Before PRITCHARD, P.J., SHANGLER, J., and TURNAGE, C.J.

PRITCHARD, Presiding Judge.

The issue is whether a statute, § 5246 RS. 1899, controlling the effect of the adoption by deed of Walter S. Brown, deceased, determines what person is his heir, or whether subsequently enacted adoption statutes govern the descent and distribu-

tion of his estate, said in the petition for declaratory judgment to be $24,056.46.

The facts stipulated by the parties are these: Walter S. Brown and his sister, Martha S. Brown, were the natural children of Charles T. and Elizabeth McQuillen Brown, who were married in Missouri some time prior to 1896. Walter was born December 15, 1896, and Martha was born March 15, 1899, both at Dover, Missouri. Shortly after Martha's birth, Elizabeth died and Charles T. placed both children for adoption. Charles T. died prior to 1931. Martha was adopted by deed of adoption by George W. Eddings on October 23, 1899, and Walter was adopted by deed of adoption by Otto A. Carmichael and Hattie B. Carmichael on October 23, 1901. Both deeds were duly recorded in Ray County, Missouri. No other children were born or adopted by Charles T. and Elizabeth. Martha S. Brown Eddings Willson died January 24, 1978, a widow, leaving one child, appellant, Donald E. Willson, she not having had any other children, natural or adopted. Walter died intestate, a widower, without children, natural or adopted, on January 30, 1980.

The Carmichaels had these children who survived Walter S. Brown: Robert Carmichael, Harold Carmichael, Alvin Carmichael; Herbert Garland Carmichael; Irene Carmichael Knox, Bernice Carmichael Sinnett; Delia Carmichael Fizer; Goldie Carmichael Bordon; and Gladys Carmichael Cline. Three other children were born but did not survive Walter: Lesta May Carmichael Derstler, deceased, leaving Frank Derstler; Hazel Carmichael Bales, deceased, leaving George Anne Blystone, Ronald K. Bales, Elva Fern Lankford, and Beverly Ross; Melvin Carmichael, deceased, leaving Kenneth G. Carmichael, Melvin O. Carmichael, Jr., Donald L. Carmichael, Robert I. Carmichael, Dolores Lucille McFee, Marilyn Sue Beissenberg, Melva Jean Barb and Betty Lou Price. The trial court declared that these persons, respondents here, were Walter's living brothers and sisters by adoption, and the children of his deceased adoptive brothers and sisters, and were his sole and only heirs.

Appellant, Donald E. Willson, contends that he is the sole surviving blood relative of Walter S. Brown and therefore he is entitled to the entire estate.

Respondents contend that the statutory enactments of this state have effectively removed Walter from the bloodline of his nephew, Donald E. Willson, in that subsequent to Walter's adoption by deed in 1901, the adoption statutes were modified, thereby removing him from his natural bloodline and placing him within the bloodline of the Carmichaels.

By Point I, in essence, appellant contends that the current adoption statute, § 453.-150, RSMo. 1978, was erroneously found by the trial court to have validly impaired his vested contractual rights created by the deed of adoption under the 1899 statute. He says that because neither of the parties to the deed of adoption, Walter S. Brown himself, nor his blood relatives, consented to the (statutory) change in contractual heirship, the legislation had no effect upon the contract rights; that the trial court should have so ruled and should have held that appellant was the sole heir of Walter S. Brown, deceased.

It should be noted that the trial court's judgment did not expressly hold that the deed of adoption created a vested contractual right, or that § 453.150 could validly impair appellant's rights. What the trial court did hold was that Section 453.150 was not unconstitutional, and that Walter's heirs must be determined under the statute of descent and distribution in effect at the time of his death, § 474.010, on January 30, 1980. Appellant's Point I will therefore be considered merely as argument for reversal of the judgment.

Section 5248, RS 1899, declared the effect of the adoption by deed statute, § 5246, supra: "From the time of the filing of the deed with the Recorder, the child or children adopted shall have the same right against the person or persons who executed the same, for support and maintenance and for proper and humane treatment, as the child has, by law, against

lawful parents; and such adopted child shall have, in all respects, and enjoy all such rights and privileges as against the persons executing the Deed of Adoption. This provision shall not extend to other parties, but is wholly confined to the parties executing the Deed of Adoption." As appellant says, these 1899 statutes created a contractual right between adoptive parents and the adopted child under the early cases. "The *status* or relation of an adopted heir is a lawful one, since the law sanctions and provides a method for its creation; but the relation is not the creature of the law, but of the deed of adoption; a child by adoption is, in a limited sense, made an heir, not by the law, but by contract evidenced by deed." *Reinders v. Koppelman*, 94 Mo. 338, 7 S.W. 288, 290 (1888); *Hockaday v. Lynn*, 200 Mo. 456, 98 S.W. 585, 589 (1906), holding, ". . . [B]y the event of adoption, he (the adopted child) has, ex contractu, the right of inheritance from his adoptive parent." [The Hockaday case held, however, that the plaintiff was not entitled to inherit from the intestate estate of the adoptive parent's brother, i.e. a collateral kindred of the adoptive parent.]; and *Weber v. Griffiths*, 349 Mo. 145, 159 S.W.2d 670, 674–675 (1941). The cases have also held that the adoption by deed statutes did not prevent an adoptive child from inheriting from his natural parents. See the dictum in *Clarkson v. Hatton*, 143 Mo. 47, 44 S.W. 761, 762 (1898), "The child becomes, in a legal sense, the child of the adopting parents, and at the same time remains the child of its natural parents, and is not deprived of its rights of inheritance from them unless expressly so provided by statute."; *Shepherd v. Murphy*, 332 Mo. 1176, 61 S.W.2d 746, 748[3, 4] (1933), stating "Prior to that enactment (the adoption statute of 1917), our statute provided that any person desiring to adopt a child 'as his or her heir' might do so by deed; i.e., by contract. On the death of an adopted child, intestate, without descendants, his or her estate went to his or her relatives by blood."; *Crawford v. Arends*, 351 Mo. 1100, 176 S.W.2d 1, 5[7] (banc

1943); and *Rumans v. Lighthizer*, 363 Mo. 125, 249 S.W.2d 397, 399[2] (1952).

Appellant seizes upon the foregoing cases for his contention that he was Walter's sole blood relative, and entitled to inherit his intestate estate. His contentions, however, are answered by subsequent legislative enactments which completely changed the status of an adopted child as it existed under prior adoption by deed statutes.

In 1917, the legislature enacted new adoption statutes, Laws 1917, p. 194, § 1671; § 14079 RSMo. 1929, which provided, "When a child is adopted in accordance with the provisions of this article, all legal relationship, and all rights and duties between such child and its natural parents, shall cease and determine. Said child shall thereafter be deemed and held to be for every purpose, the child of its parent or parents by adoption, as fully as though the child had been born to them in lawful wedlock." It was held in *McIntyre v. Hardesty*, 347 Mo. 805, 149 S.W.2d 334 (1941), and reaffirmed in *Weber v. Griffiths*, 349 Mo. 145, 159 S.W.2d 670, 673[4] (1941), that the Act of 1917 was to be applied prospectively for persons adopted according to its provisions. Nonetheless, it demonstrates the trend of legislative thinking which culminated in the expanded enactments on adoptions of what is now Chapter 453, RSMo. 1978.

Although *Weber v. Griffiths*, supra, at page 674[9–11], contains language that a statutory change conferring upon the child rights against the adopting parents' kindred might require a consent on the part of the adopter to be legally binding, that language does not suggest that there had to be a consent on the part of the adoptive parents, the Carmichaels, of Walter S. Brown himself, or his blood relatives, before the legislature could validly change the relationships of all the parties. In any event, the case of *Commerce Trust Company v. Weed*, 318 S.W.2d 289 (Mo.1958), has laid to rest any questions about the status of an adoptive child and that of his natural parents and blood relatives, and

has eliminated any requirement, if there be one as appellant contends, that there must be consent by the parties before the Legislature could change the blood stream of the adoptive child. The pertinent language is found at page 297 of the *Weed* case, in construing Laws of Mo.1917, pp. 193–195, Section 1677, quoting from *St. Louis Union Trust Co. v. Hill*, 336 Mo. 17, 76 S.W.2d 685, 689 (banc 1934): " 'The Legislature had a right to and did in strong and emphatic language change the blood stream of an adopted child. Under our present statutes an adopted child's relations with its natural parents cease; and by law it becomes the child of its adopting parents *for every purpose* as fully as though born to the adopting parents in lawful wedlock. In other words, the adopted child is taken out of the blood stream of its natural parents and placed, by the operation of law, in the blood stream of its adopting parents * * *.' " See also there the citation and quotation from *Robertson v. Cornett*, 359 Mo. 1156, 225 S.W.2d 780, 786 (1949), "We have also stated that said section [§ 1617, Laws of Mo. 1917), 'on the subject of *consequences of adoption,* in our opinion, makes respondent [adopted child] in effect a *lineal heir* of his adoptive grandfather.' "

The court in *Commerce Trust Co. v. Weed,* supra, held at page 296[4] that a remainder (created by testator's 1927 testamentary trust) was contingent until the trust was terminated at the death of the last life tenant of income [October 25, 1955], at which time it vested in testator's lineal descendants living at that time. An important issue was whether a child adopted in 1909, by deed of adoption, by testator's daughter was his lineal descendant and thus entitled to share in the remainder. The court referred to § 453.150, now RSMo. 1978 (enacted, L. 1943, p. 353, § 9616a), "Any person adopted by deed of adoption or agreement of adoption in writing prior to 1917 and wherein said instrument was filed of record prior to July 1, 1917, shall hereafter be deemed and held to be for every purpose the child of its parent or parents by adoption as fully as though born to them in lawful wedlock, and such adoption shall have the same force and effect as an adoption under the provisions of this chapter, including all inheritance rights." The court further noted that the Legislature in 1947 enacted what is now § 453.090, RSMo. 1978, which eliminated any bar to adopted children taking through his parent or parents by adoption as a bodily heir.

■ So the *Weed* case, supra, stands for the proposition that the Legislature could validly change the blood stream of an adopted child, and in this case, Walter S. Brown was placed in the blood stream of his adoptive parents, the Carmichaels, and respondents, as adoptive brothers and sisters, and their descendants, must be held to be his heirs under § 474.010, RSMo. 1978.

■ Appellant's last point is that the 1943 Act (now Section 453.150, RSMo. 1978), was unconstitutional in that it impaired (his) vested rights, and violated the constitutional prohibition of Mo. Const. Art. I, § 13 (1945) against retrospective legislation (and as to U.S. Const. Art. I, § 10, against state law impairing the obligation of contracts), and the trial court should have so held. The contention was ruled by the *Weed* case, supra, page 298[6], holding that contingent remaindermen did not have vested rights existent before the legislative enactment of 1947 concerning the effect of adoption. Appellant had merely an expectancy of inheritance from his uncle, Walter S. Brown, deceased, prior to the 1947 enactment, dependent upon Walter dying intestate, and appellant then surviving him. This contingent expectancy was validly removed by the Legislature as held in the *Weed* case, supra. This court must follow the constitutional determination by the Supreme Court of the validity of § 453.150, and that issue is therefore not before this court.

All of appellant's contentions are determined to be without merit, and the judgment is affirmed.

All concur.